# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                            No. CR 12-3012 JB

MARC TAPIA, a/k/a Mark Anthony Russel,
a/k/a, Mark Lovato, a/k/a Anthony Tapia

        Defendant.

## AMENDED MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on Defendant's Amended Objections to Presentence Report, Motions for Downward Variance and Departure, and Motion to Run Sentence Concurrent to State Sentence, filed August 15, 2016 (Doc. 98)("Objections"). The Court held a hearing on August 23, 2016. The primary issues are: (i) whether the Court should, under U.S.S.G. § 4A1.2(e), assess 3 criminal history points for Defendant Marc Tapia's state conviction for Aggravated Battery with a Deadly Weapon, which depends on whether the Court should count that conviction's sentence as 18 months imprisonment -- as a state court originally, but incorrectly, imposed -- or as 238 days imprisonment, as the state court originally intended and recently imposed in an amended judgment; (ii) whether Tapia's base offense level should be 20, which depends on whether Tapia has a prior felony conviction for a crime of violence; (iii)

---

[1]The Court issues this Amended Memorandum Opinion and Order to correct Tapia's base offense level. The Court previously determined that Tapia had a prior controlled substance offense that, pursuant to § 2K2.1(a)(4)(A), set his base offense level at 20. See Memorandum Opinion and Order at 42-43, filed November 28, 2017 (Doc. 119). The Court now understands that Tapia's prior controlled substance offense did not involve an intent to manufacture, import, expert, distribute, or dispense the controlled substance, as § 2K2.1(a)(4)(A) requires. See U.S.S.G. § 2K2.1(a)(4)(A) App. No. 1; U.S.S.G. § 4B1.2(b). Consequently, the Court determines that, pursuant to § 2K2.1(b)(6)(B), Tapia's base offense level is 18. See infra Part II.

whether to assess 3 criminal history points for Tapia's prostitution- and automobile theft-related convictions, which depends on whether those offenses are relevant to Tapia's instant offense; (iv) whether Tapia's criminal category is V or VI; (v) whether the Court will grant a downward adjustment or additional custody confinement credit, which depends on whether the prostitution- and automobile theft-related offenses are relevant to Tapia's instant offense. The Court concludes that: (i) Tapia's Aggravated Battery with a Deadly Weapon conviction does not call for 3 criminal history points under U.S.S.G. § 4A1.2(e), because the Court will use the recently amended sentence -- 238 days -- and not the originally imposed 18 month sentence; (ii) Tapia's base offense level is 18 under U.S.S.G. § 2K2.1(b)(6)(B), because Tapia committed the firearm offense in connection with another felony offense; (iii) the Court assesses 3 criminal history points for Tapia's prostitution- and automobile theft-related convictions, because they are not relevant conduct to his instant offense; (iv) Tapia's criminal history score is 11, so his criminal history category is V; and (v) the Court will not grant a downward adjustment or grant additional custody confinement credit for time served on Tapia's prostitution- and automobile theft-related convictions, because the convictions are not relevant conduct to his instant offense.

## FACTUAL BACKGROUND

On April 11, 2012, the Albuquerque Police Department's VICE unit, working to "apprehend females who were using the internet . . . to solicit prostitution," contacted a woman named Montana Levasseur and agreed to pay her $300.00 for sex in a hotel room. Presentence Report ¶¶ 13-14, at 5, disclosed on October 2, 2017, filed November 21, 2017 (Doc. 117) ("PSR"). Levasseur arrived at the hotel room with a crate containing two small dogs. See PSR ¶ 15, at 5. Levasseur called Tapia on the telephone, and told him that "she was in the room and was safe." PSR ¶ 13, at 5. After arresting Levasseur, APD allowed Levasseur to call Tapia to

tell him that she "got busted," and to ask him to come to the hotel and pick up her dogs.  See PSR ¶¶ 15-16, at 5-6.  Tapia agreed, and, when he arrived at the hotel in his car, APD officers ordered him to exit the vehicle, but Tapia tried to drive from the area.  PSR ¶ 16, at 5-6.  Tapia's car stalled, and APD officers apprehended him.  See PSR ¶¶ 16-17, at 5-6.  APD officers found, among other things, a pistol and ammunition in Tapia's car.  See PSR ¶¶ 19-20, at 6-7.

## PROCEDURAL BACKGROUND

In November, 2012, a grand jury indicted Tapia for possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  See Indictment at 1-2, filed November 27, 2012 (Doc. 2).  Plaintiff United States of America and Tapia reached a plea agreement.  See Plea Agreement, filed July 30, 2015 (Doc. 48).  In the plea agreement, Tapia agrees that, "[o]n or about April 11, 2012," he "knowingly possessed a loaded Cobra, model C22, .22LR caliber Derringer" and ammunition in a car he was driving "prior to being encountered by law enforcement."  Plea Agreement ¶ 6(a), at 3.  Tapia also admits that "[p]rior to April of 2012, [he] previously had . . . felony convictions" in the Second Judicial District, County of Bernalillo, State of New Mexico, and in the County of Los Angeles, Superior Court of California.  Plea Agreement ¶ 6(a), at 3.  Tapia also waives his right to appeal any conviction, sentence, or fine "at or under the maximum statutory penalty authorized by law," but reserves the right to appeal "the sole issue of the Court's application of the definition of 'crime of violence' to his base offense level under U.S.S.G. § 2K2.1(a)."  Plea Agreement ¶ 14, at 7.  Tapia also agreed to waive "any collateral attack" on any conviction, sentence, or fine pursuant to 28 U.S.C. §§ 2241, 2255, "or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance."  Plea Agreement ¶ 14, at 7.

1. **The Pre-Sentence Report.**

The United States Probation Office ("USPO") disclosed its PSR on October 2, 2015. See PSR at 1. The PSR set Tapia's Base Offense Level at 20, because Tapia "committed the instant offense subsequent to sustaining at least one felony conviction for a crime of violence offense." PSR ¶ 28, at 8 (citing U.S.S.G. § 2K2.1). Although the PSR does not expressly state which crime of violence felony conviction calls for a base level of 20, the parties' briefing indicates that the felony in question is Tapia's 1997 conviction for Aggravated Battery with a Deadly Weapon. See Objections ¶ 25(I), at 18 (arguing that Tapia's Aggravated Battery with a Deadly Weapon conviction calls for 0 criminal history points such that his base offense level should not be 20); PSR ¶ 41, at 9-10 (stating that Tapia was convicted of Aggravated Battery with a Deadly Weapon for stabbing a man in the chest). The PSR adds 4 levels for Specific Offense Characteristics, because "the defendant was found in possession of a firearm and narcotics with the intent to distribute, classified as a felony." PSR ¶ 28, at 8. The PSR subtracts 2 levels, because Tapia "has clearly demonstrated acceptance of responsibility," and subtracts 1 level further, because Tapia "has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty." PSR ¶¶ 35-36, at 8. Accordingly, the PSR calculates Tapia's Total Offense Level as 21. See PSR ¶ 37, at 8.

The PSR also details Tapia's criminal history, see PSR ¶¶ 40-47, at 9-14, for which the USPO assigns a criminal history score of 14, see PSR ¶ 48, at 14. In 1990, Tapia was sentenced in California Superior Court to five years imprisonment for Rape in Concern with Force/Violence, and Robbery. See PSR ¶ 40, at 9 (assigning 0 criminal history points). In 1997, the Second Judicial District Court, County of Bernalillo, State of New Mexico, sentenced Tapia

to "3 years imprisonment, 18 months suspended, 18 months supervised probation," for "Aggravated Battery with a Deadly Weapon (Great Bodily Harm)." PSR ¶ 41, at 9-10 (assigning 3 criminal history points). In 1998, Tapia pled guilty in the North Judicial District Court in Orange County, California, to "Corporal Injury [of a] Cohabitant," and "Brandishing a Deadly Weapon." PSR ¶ 42, at 10 (assigning 0 criminal history points). In 2003, Bernalillo County's Second Judicial District Court sentenced Tapia to "18 months custody, 18 months suspended, 3 years supervised probation, 1 year parole," for "Possession of a Controlled Substance (4th Degree Felony)." PSR ¶ 43, at 10-11. In 2005, Bernalillo County's Second Judicial District Court again sentenced Tapia to "18 months custody, 18 months suspended, 3 years supervised probation, 1 year parole," this time for "False Imprisonment (4th Degree Felony)." PSR ¶ 44, at 11-12 (assigning 2 criminal history points). In 2012, the Bernalillo County Metropolitan Court sentenced Tapia to "73 days custody" for "Criminal Damage to Property." PSR ¶ 46, at 12-13 (assigning 2 criminal history points). In 2013, Bernalillo County's Second Judicial District Court sentenced Tapia to two and a half years imprisonment and two years of parole for "Possession of a Controlled Substance (Felony)." PSR ¶ 45, at 12 (assigning 3 criminal history points). In 2015, Bernalillo County's Second Judicial District Court sentenced Tapia to (i) "18 months custody, 1 year habitual offender enhancement, 1 year parole" for "Promoting Prostitution (Soliciting Patrons)"; (ii) "18 months custody, 1 year habitual offender enhancement, 1 year parole," for "Accepting the Earnings of a Prostitute"; (iii) "18 months custody, 1 year parole," for "Receiving or Transferring Stolen Motor Vehicle"; (iv) "18 months custody, 1 year parole," for "Possession of a Controlled Substance (Felony-Narcotic)"; and (v) "18 months custody, 1 year parole," for "Aggravated Fleeing a Law Enforcement Officer," with "said terms . . . to run consecutively, 4 years and 6 months custody suspended, the actual

term to be served is 5 years custody, 1 year parole, 4 years and 6 months supervised probation." PSR ¶ 47, at 13-14 (assigning 3 criminal history points). The USPO issued an Addendum to the Presentence Report (dated January 25, 2016), filed November 21, 2017 (Doc. 118)("First Addendum"), adding Tapia's medical and employment information. See First Addendum at 1.

### 2. Tapia's First Objections to the PSR.

Tapia makes several legal objections to the PSR. See Objections to Presentence Report, Motions for Downward Variance and Departure, and Motion to Run Sentence Concurrent to State Sentence, filed June 6, 2016 (Doc. 88)("First Objections"). First, Tapia argues that the United States Sentencing Guidelines' 2015 edition is applicable to his case, because the Guidelines provide that a court shall use the Guidelines' edition in effect when the defendant is sentenced. See First Objections ¶¶ 1-2, at 3-4 (citing U.S.S.G. 1b1.11(a)).

Second, Tapia argues that Guidelines' commentary and applicable notes "are authoritative." First Objections ¶ 3, at 4.

Third, Tapia asserts that he deserves a downward variance in light of the 22-month "period of delay after the Detainer was lodged against him" and before he was taken into federal custody. First Objections ¶¶ 4-10, at 4-8.

Fourth, Tapia argues that his sentence for "prostitution-related charges"[2] should not count as a "prior sentence" calling for 3 criminal history points, because those charges "aris[e] out of

---

[2]The "prostitution-related charges" refer to Tapia's conviction, on April 30, 2015, to "Promoting Prostitution (Soliciting Patrons)," "Accepting the Earnings of a Prostitute," "Receiving or Transferring Stolen Motor Vehicle," "Possession of a Controlled Substance (Felony-Narcotic)," and "Aggravated Fleeing a Law Enforcement Officer." PSR ¶ 47, at 13 (referring to Case No. D-2-2-CR-2012-03528 in New Mexico's Second Judicial District Court). According to the PSR, a grand jury indicted Tapia based on allegations that Tapia engaged in prostitution-related activities "between the dates of January 12, 2012 through June 12, 2012."

the circumstances" of the instant firearm-related offense, and, Tapia argues, the Guidelines indicate that a "prior sentence" does not include "relevant conduct to the instant offense."  First Objections ¶ 15, at 11 (citing U.S.S.G. § 4A1.2, Appl. Note 1).  Tapia asserts that both his prostitution-related charges and firearms-related charges derive from the same incident, because the Albuquerque Police Department discovered the firearms in his car after they arrested him for the prostitution-related charges.  See First Objections ¶¶ 13-17, at 8-11.  Additionally, Tapia argues that the prostitution-related charges and the firearm-related charges are not "similar in nature" and, although the charges "are potentially groupable under U.S.S.G. § 3D1.2," they are "not groupable in how they are processed in this case."  First Objections ¶ 16, at 11-12.

Fifth, Tapia argues that his sentence should run concurrently with his "undischarged term of imprisonment."  First Objections ¶¶ 18-24, at 12-14.

Sixth, Tapia argues that the Court should not assess 3 criminal points pursuant to U.S.S.G. § 4A1.1(a) -- which adds 3 criminal history points for each prior sentence "exceeding one year and one month" -- because a state court judge mistakenly sentenced Tapia to 18 months, when the judge intended to sentence Tapia to 238 days.  First Objections ¶ 25(A)-(G), at 14-19.

Seventh, Tapia argues that one of his prior sentences -- the one rendered in No. T-4-DV-2012-003628 -- did not exceed 60 days of incarceration, so U.S.S.G. § 4A1.1(c), not

---

PSR ¶ 47, at 13-14.  The indictment also alleges that, on June 12, 2012, Tapia fled from an APD officer in a stolen car, and that, when officers eventually apprehended him, they discovered a plastic bag containing methamphetamine residue in Tapia's pocket.  See PSR ¶ 47, at 14. Tapia's girlfriend, Montana Levasseur, was a passenger in the car and told APD that Tapia "was forcing her to engage in prostitution."  PSR ¶ 47, at 14.  Levasseur is the same woman arrested with Tapia during the instant offense, on April 12, 2012.  See PSR ¶¶ 15-16, at 5-6.

§ 4A1.1(b), should apply.  See First Objections ¶¶ 27-28, at 18-19.  Tapia contends that the Metropolitan Court "changed the amount of time [he] spent in custody from 73 to 58 days." First Objections ¶ 27, at 19.

Eighth, Tapia contends that the Court should grant a downward variance because of his "paternal responsibilities to a teenage daughter" such that he would be immediately released to a halfway house.  First Objections ¶ 28-42, at 19-23.

### 3.    The USPO'S Second Addendum.

The USPO responded to Tapia's Objections in its Second Addendum to the Presentence Report, filed June 30, 2016 (Doc. 90)("Second Addendum").  The USPO begins by noting that Tapia argues that the Court should use the 2015 Guidelines to calculate his sentence ("Objection No. 1"), and the USPO responds that, although the 2015 Guidelines were released after it disclosed its PSR, the USPO confirmed that any changes between the 2014 and 2015 Guidelines do not impact Tapia.  See Second Addendum at 1.

The USPO then states that Tapia "contests the custody confinement credit" in the PSR, because, as the USPO characterizes it, Tapia argues that "the two subsequent state court cases, D-202-CR-2012-3528, and D-202-CR-2012-03337 are cases that arise out of the same circumstances as the instant offense on April 11, 2012."[3]  Second Addendum at 1 ("Objection No. 2").  The USPO asserts that Tapia "will receive custody confinement credit for the instant

---

[3]Case No. D-202-CR-2012-3528 is Tapia's case involving charges for promoting prostitution, accepting the earnings of a prostitute, receiving or transferring a stolen motor vehicle, possession of a controlled substance, and aggravated fleeing a law enforcement officer. See ¶ 47, at 13.  Case No. D-202-CR-2012-03337 is Tapia's Possession of Controlled Substance case.  See ¶ 45, at 12.

offense" for only five days, because the other cases Tapia mentions are "similar to the instant offense" but "not related." Second Addendum at 1-2. The USPO contends:

> The conduct in Case No. D-202-CR-2012-3528, occurred between January 5 and 13, 2012, with the exception of a charge for receiving/transferring a stolen motor vehicle that occurred between April 2, 2012, and June 12, 2012. During the instant offense, discovery materials do not report the defendant was operating a stolen vehicle he received or transferred. The conduct in Case No. D-202-CR-2012-03337, occurred on January 5, 2012.

Second Addendum at 1. Consequently, the USPO asserts that Tapia "will receive custody confinement credit for the instant offense from April 11, 2012, to April 15, 2012, for a total of five days." Second Addendum at 1-2. The USPO adds that "[d]ue to the defendant being released to federal custody on a writ of habeas corpus on the aforementioned cases, the defendant will not receive further credit." Second Addendum at 2.

The USPO then considers Tapia's argument that those cases -- detailed in PSR's ¶ 47 -- are related such that the USPO should not assess criminal history points for them ("Objection No. 3") and the USPO asserts that, because they are similar but not related to the instant case, criminal history points should be applied. See Second Addendum at 2.

Next, the USPO considers Tapia's assertion that his sentence should run concurrently to his sentence for Case No. D-202-CR-2012-03528, and that the Court should adjust Tapia's sentence for time already served on the state sentence ("Objection No. 4"). Second Addendum at 2. The USPO states that Tapia's sentence should run consecutive to Tapia's other sentences, and that no downward departure pursuant to U.S.S.G. § 5G1.3 applies, because that state case "is not related to the instant offense." Second Addendum at 2. The USPO notes that the Court has discretion to impose the sentences concurrently. Second Addendum at 2.

The USPO disputes Tapia's contention that it should not impose 3 criminal history points pursuant to U.S.S.G. § 4A1.2 because of the state court's erroneous sentencing judgment setting his sentence at 18 months instead of 238 ("Objection No. 5"). Second Addendum at 2-3. The USPO asserts that, per U.S.S.G. § 4A.1.2, criminal history points are based on the pronounced sentence, and not on the time served. <u>See</u> Second Addendum at 3 (citing U.S.S.G. § 4A.1.2, App. No. 2).

Next, the USPO considers Tapia's Objection to the 2 criminal history points imposed for a sentence of more than 60 days in case No. T-4-DV-2012-003628, because that sentence was adjusted to fewer than 60 days ("Objection No. 6"). Second Addendum at 3. The USPO concludes that "[a]fter review of the amended judgment, the defendant will be assessed one criminal history point rather than two." Second Addendum at 3.

The USPO then considers Tapia's factual objections regarding the events recounted in PSR's ¶ 53 ("Objection No. 7") and ¶ 56 ("Objection No. 8") -- describing violent altercations -- which Tapia contends never happened. The USPO states that it will not change those paragraphs, because the USPO drew the facts from police reports, and the "identifiers listed in the APD report are consistent with the identifiers reported by the defendant." Second Addendum at 3.

The USPO considers Tapia's Objection to the PSR's ¶ 67 -- which states that Tapia failed to report his residential address, as required for sex offenders ("Objection No. 9"). Second Addendum at 4. Although Tapia contends that he did not need to update his address, the USPO states that it will keep the information in the PSR, because, "[a]ccording to law enforcement records, the defendant did not properly report his residence as required." Second Addendum at 4. The USPO then considers Tapia's objection to the PSR's ¶ 69 ("Objection No. 10"), which

lists a dismissed charge for failure to register as a sex offender, and the USPO states that "[b]y way of this addendum it is noted the defendant was in custody when the charge was filed." Second Addendum at 4. The USPO also asserts that it will retain references to Tapia's alleged possession of a stolen 2007 John Deer Excavator, even though Tapia contends he never was in possession of the 2007 John Deer Excavator ("Objection No. 11"). Second Addendum at 4.

The USPO next states that it will add certain facts that Tapia alleges into the PSR, by way of the Second Addendum. See Second Addendum at 4-5. Specifically, the USPO states that it adds: (i) that Tapia witnessed his mother's boyfriend shoot himself in the head ("Objection No. 12"); (ii) that Jimmy Russell, Tapia's adoptive father, never hit or abused Tapia, and that Tapia's uncles hit and abused him, and encouraged his cousins to fight regularly ("Objection No. 13"); and (iii) that he had a brief relationship with a woman, and they had a daughter named Vanessa, and the woman placed Vanessa up for adoption while Tapia was incarcerated, against Tapia's wishes ("Objection No. 14"). Second Addendum at 4-5.

### 4. **The United States' Response.**

The United States filed its Response on August 10, 2016. See United States' Response to Defendant's Objections to Presentence Report and Sentencing Memorandum, filed August 10, 2016 (Doc. 97)("USA Response"). The United States asserts that it "concurs with the responses of the United States Probation Office, with the sole caveat that the United States does not object to having the Defendant sentenced within the sphere of a criminal category of v." USA Response at 2. The United States continues:

> This would trigger a guideline range of 70-87 months. Consistent with the plea agreement, the United States does not oppose having Defendant's sentence run concurrently to any undischarged term of state imprisonment. The United States has also agreed to recommend a sentence at the low end of the applicable range, thereby arriving at the 70 month recommendation. Consideration was given to

some of the delay that occurred with respect to bringing Defendant into federal custody.

USA Response at 2.

### 5.    Tapia's Objections Supplement.

Tapia supplemented his Objections on July 12, 2016.  See Supplement to Objections to Presentence Report, Motions for Downward Variance and Departure, and Motion to Run Sentence Concurrent to State Sentence, filed August 12, 2016 (Doc. 93)("Supp. Objections"). Tapia first argues that his felony conviction for Aggravated Battery with a Deadly Weapon, see PSR ¶ 41, at 9-10, does not meet either § 4A1.2(e)(1) or (e)(2), so § 4A1.2(e)(3) applies[4]: the conviction is not a "prior sentence" pursuant to § 4A1.2(a), and therefore does not call for any criminal history points pursuant to § 4A1.1(a) or (b).  See Supp. Objections at 1-2.  Second, Tapia argues that, because his Aggravated Battery with a Deadly Weapon conviction calls for no criminal history points, the USPO should apply a base offense level of 18, pursuant to § 2K2.1(a)(5), because § 2K2.1(a)(4)(A) -- which calls for a 20 point base offense level if the defendant has a previous crime of violence felony conviction -- applies only when that felony conviction receives criminal history points under § 4A1.1(a), (b), or (c).  See Supp. Objections at 1-2 (citing U.S.S.G. § 2K2.1 App. No. 10).

### 6.    Tapia's Amended Objections to the PSR.

In his Amended Objections, Tapia repeats arguments from his First Objections, with some additions and revisions.  See Objections ¶¶ 1-42, at 3-23.  Regarding his argument for a

---

[4]In his Supp. Objections, Tapia refers to §4A1.2(**c**)(1), (2), and (3), but the Court presumes Tapia intends to refer to §4A1.2(**e**), because there is no subsection §4A1.2(c)(**3**), and, when Tapia revisits these arguments in his Objections, he refers to §4A1.2(e).  See Objections ¶ 25, at 18.

downward variance in light of a delay in taking him into federal custody, Tapia adds that, despite his "repeated attempts to bring himself into Federal custody," more than 23 months have passed since his indictment.  Objections ¶ 7, at 6.  Tapia also asserts that his attorney "made calls to the U.S. Marshal and to the Assistant U.S. Attorney . . . regarding his case on March 11, 2013." Objections ¶ 7, at 6.

Tapia also supplements his argument that his "prostitution-related charges" should not count as a "prior sentence" calling for 3 criminal history points.  See First Objections ¶ 15, 11. Tapia adds that, if the Court concludes that the prostitution-related sentence is a prior sentence, the Court should assess, pursuant to U.S.S.G. § 4A1.1(c), only 1 point, and not 3 points, because Tapia appealed that sentence, and, under New Mexico law, "all appeals have the effect of a stay of execution of the sentence during the pendency of the appeal."  Objections ¶ 17, at 11 (citing N.M. Stat. § 31-11-1A).

Tapia also argues that because he was "convicted of charges arising on the same date and time from the same circumstances and incident as the present case, . . . [he] should be credited a minimum of 30 months towards his federal sentence."  Objections ¶ 21, at 13.

Finally, Tapia supplements his argument that the Court should not assess 3 points pursuant to U.S.S.G. § 4A1.1(a) -- assessing 3 points for each prior sentence "exceeding one year and one month" -- by explaining that a state court judge mistakenly sentenced Tapia to 18 months, when the judge indented to sentence Tapia to 238 days.  First Objections ¶ 25(A)-(G), at 14-19.  Tapia states that, on August 11, 2016, the Honorable Benjamin Chavez, District Judge of the Second Judicial District, State of New Mexico, "signed an Order correcting the previously filed Judgment and Sentence to accurately reflect that the sentence imposed by the Court was a term of 238 days, not 18 months."  Objections ¶ 25(A), at 14.  Tapia provided the Court with a

copy of the Amended Judgment, Partially Suspended Sentence & Commitment Pro Nunc Tunc, filed August 15, 2016 (Doc. 98-6)("Amended Judgment"), which states that "[T]he Defendant is sentenced to the custody of the Department of Corrections to be imprisoned for a term of 3 years of which 28 months and 3 days is suspended for an actual term of imprisonment of 238 days" and that "Defendant is to receive 238 days pre-sentence confinement credit." Amendment Judgment at 1. In light of the Amended Judgment, Tapia contends, that sentence does not call for a 3-point assessment pursuant to U.S.S.G. § 4A1.2(e)(1), because it did not exceed a year and one month, nor is a 3-point assessment appropriate pursuant to U.S.S.G. § 4A1.2(e)(2), because the sentence was not imposed within 10 years of the instant offense. Objections ¶ 25(H), at 18. Tapia further contends that because his prior sentence does not call for 3 points pursuant to U.S.S.G. § A1.2(e), his base offense level must be reduced "from 20 under U.S.S.G. § 2K2.1(a)(4)(A) to 18 under U.S.S.G. § 2K2.1(a)(5)." Objections ¶ 25(I), at 18 (citing U.S.S.G. § 2K2.1, App. No. 10). Tapia concludes that his base level should, in the end, be 18, because: (i) U.S.S.G. § 2.K2.1(a)(5) "is not applicable because the derringer pistol possessed by Mr. Tapia, has a rifled bore, [and] is not a firearm described in 26 U.S.C. § 5845(A)"; (ii) U.S.S.G. § 2K2.1(a)(6) "is not applicable because Mr. Tapia does not meet the criteria"; and (iii) applying U.S.S.G. § 2K2.1(b)(6)(B) calls for increasing Tapia's base offense level by 4 "to a level 16," and, because "this resulting offense level is less than level 18, it should be increased to level 18." Objections ¶ 25(J)-(O), at 19.

### 7. **The USPO's Third Addendum.**

The USPO submitted its Third Addendum to the Presentence Report, filed August 18, 2016 (Doc. 100)("Third Addendum"). The USPO begins by again disputing Tapia's Objection No. 5 that the Court should not impose 3 points pursuant to U.S.S.G. § 4A1.2, because of the

state court's erroneous sentencing judgment setting his sentence at 18 months instead of 238 days. Third Addendum at 1. The USPO asserts that, per U.S.S.G. § 4A.1.2, criminal history points are based on the pronounced sentence, and not on the time served. See Third Addendum at 2-4 (citing U.S.S.G. § 4A.1.2, App. No. 2). The USPO asserts that in the United States Court of Appeals for the Tenth Circuit, "shorten[ing] the term of custody imposed based on the amount of custody time . . . served for reasons unrelated to . . . innocence or errors of law" is not a valid basis by which a court can exclude a sentence from its criminal history calculations. Third Addendum at 2 (citing United States v. Paul Pech-Aboytes, 562 F.3d 1234 (10th Cir. 2009)).

Next, the USPO reconsiders Tapia's Objection No. 6 contesting the 2 criminal history points imposed for a sentence of more than 60 days, because that sentence was adjusted to fewer than 60 days. See Third Addendum at 2. The USPO states that, "[b]ased on the additional information added to Response No. 5, since the disclosure of the Second Addendum, the defendant will be assessed the 2 criminal history points as initially applied in the presentence report." Third Addendum at 2-3.

The USPO then considers Tapia's argument that he does deserve, pursuant to U.S.S.G. § 2K2.1(a)(6), a 20 point base offense level, because his felony sentencing was for only 238 days, not 18 months. ("Objection No. 15"). See Third Addendum at 3. The USPO states that, as discussed in the USPO's response to Tapia's Objection No. 6, the conviction's "criminal history points . . . were accurately applied." Third Addendum at 3.

Next, the USPO states that Tapia asserts new information that it adds to its PSR. See Third Addendum at 3. Specifically, the USPO adds Tapia's assertions that (i) he did not stab his cousin, but rather his cousin stabbed him ("Objection No. 16"); and (ii) his mother's boyfriends

and husband -- but not his adoptive father Russell -- verbally and physically abused him ("Objection No. 17"). Third Addendum at 3.

### 8. **Tapia's Response to USPO's Third Addendum.**

Tapia responded to the USPO's Third Addendum in the Defendant's Supplement to Objections to Presentence Report, filed March 6, 2017 (Doc. 111)("Supp. Amended Objections"). Tapia begins by "conced[ing] the position of the USPO regarding Objection No. 6" -- i.e., agreeing with the USPO that 2 criminal points are appropriate pursuant to U.S.S.G. § 4A1.1(b) in light of his 73 day sentence for Case No. T-4-DV-2012-003628. Supp. Amended Objections at 1-2 (citing PSR ¶ 46, at 12-13; Third Addendum at 2-3).

Next, Tapia addresses Objection No. 5 -- that a clerical error led to a sentence of 238 days being listed as 18 months. See Supp. Amended Objections at 2. Tapia contends that the state court did not modify or shorten his sentence; rather, the state court corrected a clerical error. See Supp. Amended Objections at 2 (citing Cairns v. Richardson, 457 F.2d 1145, 1149 (10th Cir. 1971); United States v. Spaulding, 802 F.2d 1110, 1127 (10th Cir. 2015)). Tapia summarized the state court's conclusions:

> The Second Judicial District Court found that the "May 6, 1998 Judgment and Sentence erroneously states Mr. Tapia had 18 months of pre-sentence confinement time." The Second Judicial District Court found the "record supports 238 days actual pre-sentence confinement time." The Second Judicial District Court found "a clerical error occurred in documenting Mr. Tapia's presentence confinement time." The Second Judicial District Court found "it is necessary that the Judgment and Sentence conform to the record" and "correcting the clerical error in the May 6, 1998 Judgment and Sentence to accurately reflect and conform to the record." The Second Judicial District Court found it "is not modifying, vacating, or reducing the original sentence imposed." The Second Judicial District Court found "that Mr. Tapia's pre-sentence confinement time constituted the actual sentence imposed." The Second Judicial District Court found "the original judgment and Sentence contains an inaccurate accounting of Mr. Tapia's pre-sentence confinement time, therefore an incorrect recitation of the actual sentence imposed." The Second Judicial District Court found the "August

11, 2016 Amended Judgment and Sentence Nunc Pro Tunc accurately reflects the record and intent of the parties."

Supp. Amended Objections at 2-3 (citations omitted)(quoting Second Judicial District Court Findings of Fact at 1-5 (dated October 14, 2016), filed March 6, 2017 (Doc. 111-1)). Moreover, Tapia contends that he "did not seek this correction 'for reasons unrelated to . . . errors of law,' he sought the correction to bring the Judgment & Sentence in line with his actually imposed sentence." Supp. Amended Objections at 5 (quoting Third Addendum at 2). Consequently, Tapia concludes that the USPO should consider that sentence to be for 238 days, and not for 18 months, and therefore the sentence does not trigger criminal history points under U.S.S.G. § 4A1.2(e)(2) or (e)(3). See Supp. Amended Objections at 5.

        **9.      The Hearing.**

The Court held a hearing on August 23, 2016. See Draft Motion Hearing Transcript, taken August 23, 2016 ("Tr.").[5] Tapia argued that United States v. Pech-Aboytes's facts are distinguishable from this case, because in that case, the defendant committed the offense while on probation, the USPO's PSR revealed that the defendant faced a heightened sentence because he committed the offense while on probation, and the defendant moved the state court to modify the sentence so that the probation ended before the offense's date. See Tr. 36:15-25 (Cruz). Tapia contends that, by contrast, here Tapia noticed the PSR referred to 18 months of incarceration, and Tapia recognized that 18 months was incorrect. See Tr. 36:25-37:8 (Cruz). The Court asked how the sentence could be incorrect, and Tapia explained:

        This is one of those classic cases where a guy sitting in jail and he's offered a plea
        bargain if he pleads to a felony he'll get out of jail and go straight to

---

[5]The Court's citations to the hearing's transcript refers to the court reporter's original, unedited version. Any final version may contain slightly different page and/or line numbers.

probation . . . . The sentencing happened, and then the judgment and sentence for that case wasn't filed for something like [8 months] . . . . And when it was filed whoever drafted it was under the impression that our client had done 18 months presentence confinement and should get credit for that when in reality it was only a couple of hundred days, so the sentence from the state court that's in our materials is correct a factual error in the sentence which incorrectly recited that he had done 18 months and therefore the Court in the original order said you know it order that he does 18 months and he gets presentence confinement credit.

Tr. at 37:9-38:13 (Court, Serna). Tapia stated that the error is a factual or clerical error, "but if this Court is telling us that we need a finding from the state court saying that it was corrected for reasons having to do with innocence or errors of law, I don't think we have that. It was a factual error." Tr. at 38:13-19 (Serna). Tapia again distinguished his case from <u>United States v. Pech-Aboytes</u> because Tapia "did not modify the sentence; the sentence remained the same. It was a three year probated sentence. What was the clerical error was the fact that they gave him 18 months instead of 8 months credit presentence confinement time." Tr. at 39:24-40:1-4 (Cruz).

The Court then asked:

Let's say I . . . sentence [a] person to time served and . . . the presentence report said 52 days, but it turned out it was only 35 days. Why, if I'm trying to shift that over then to the PSR next time that person is sentenced, why should they be able to say that the sentence was corrected because the sentence remained the same?

Tr. at 40:14-22 (Court). Tapia responded that, because the "judgment and sentence was corrected to reflect what actually happened at the court, so if it was time served, however much time it was, that's what the judge intended." Tr. at 40:23-41:2 (Serna). Tapia added:

The amended judgment and sentence reflects that the amount of time imposed, the actual sentence of imprisonment was the number of days he served. If there is some applicable time period or some cut off in the sentencing guidelines, then . . . Mr. Tapia certainly should not get dinged for that when it was factual error, when in reality he never served more than a year and a month . . . but some judge eight months after he was sentenced signed a judgment and sentence saying that he gets credit for the 18 months he did in prison . . . . [T]hat is unfair to Mr. Tapia, because . . . the corrected sentence as pronounced was the correct number of days

that he got presentence confinement credit for and therefore the sentence was imposed as to the number of days that he did presentence confinement.

Tr. at 41:15-42:9 (Serna). The Court responded: "[W]hat I'm thinking is this looks a whole lot like a factual error and I guess I'm looking at [United States v. Pech-Aboytes], and you'd agree with me it doesn't say factual errors, it says innocence, or legal errors." Tr. at 42:22-43:1 (Court).

Tapia then gave more background information about the sentence, stating that, a public defender represented him, and "he had specifically requested [that] because he was incarcerated at the time whether or not if he pled to that they are offering him credit time served that it would have any effect on this case. And it was represented to him that it would not. Well, it did." Tr. at 44:20-45:1 (Cruz). Tapia asserts that once the public defender's office "learned of that [effect], it was their office that [said] okay we'll go back and fix that so it has a lesser effect." Tr. at 45:1-4 (Cruz).

Tapia argued that "the nunc pro tunc order in the 1994 case was not for the purpose of . . . go[ing] back and rewrit[ing] it. We corrected the record so that the former order that was issued on August 11 actually conforms to the Court file." Tr. at 45:9-14 (Cruz). Tapia once again distinguished this case from United States v. Pech-Aboytes, arguing that, in that case, the probation amendment "was done ex parte, that was done over Government objection [and] that's never been the case . . . in this case here." Tr. at 45:14-19 (Cruz).

**LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES**

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court of the United States reaffirms the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment

within the range prescribed by statute." 530 U.S. at 481. The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and its Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. at 303 (emphasis and citations omitted). Apprendi v. New Jersey does not, however, "apply to the present advisory-Guidelines regime," because the sentencing guidelines are no longer mandatory. United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013)(citing United States v. Booker, 543 U.S. 220, 259 (2005)). More recently, the Supreme Court held that Apprendi v. New Jersey's requirements apply to facts that increase a defendant's mandatory minimum sentence. See Alleyne v. United States, 570 U.S. 99 (2013).

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker do not change the district court's enhancement findings analysis. See United States v. Magallanez, 408 F.3d at 684-85. United States v. Magallanez involves plain-error review of a drug sentence in which a jury found the defendant guilty of conspiracy to possess with intent to distribute, and to distribute, methamphetamine. See 408 F.3d at 676. As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses

indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines.  See 408 F.3d at 682.  The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months to 121 to 151 months.  See 408 F.3d at 682-83.  On appeal, the Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, 18 U.S.C. § 3553, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict."  408 F.3d at 684.  Although United States v. Booker made the Guidelines ranges "effectively advisory," the Tenth Circuit reaffirms that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before."  United States v. Magallanez, 408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance."  United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[6]  "[T]he application of an enhancement . . . does not implicate

---

[6]Although the Tenth Circuit states in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105).  See United States v. Olsen, 519 F.3d 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)).  The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence.  United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher

the Supreme Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, 2012 WL 2574810, at *3 (D.N.M. 2012)(Browning, J.). The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314. A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increased his sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 592 F. App'x 699, 705 (10th Cir. 2014)(unpublished)(holding that, after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").[7] The Court has noted:

---

standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence, because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges, entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (finding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

    [7]United States v. Hendrickson, is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not

> [A]lthough the decision of the Supreme Court of the United States in <u>Alleyne v. United States</u>, . . . 133 S. Ct. 2151 . . . (2013), expands the rule from <u>Apprendi v. New Jersey</u>, 530 U.S. 466 . . . (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence. <u>See</u> [<u>United States v. Sangiovanni</u>,] 2014 WL 4347131, at *22-26 [(D.N.M. 2014)(Browning, J.)].

<u>United States v. Cervantes-Chavez</u>, 2014 WL 6065657, at *14 (D.N.M. 2014)(Browning, J.).

In <u>United States v. Ulibarri</u>, 115 F. Supp. 3d 1308 (D.N.M. 2015)(Browning, J.), the Court considered the United States' assertion that the defendant deserved 8 additional offense levels for threatening to cause physical injury to a person in order to obstruct justice. <u>See</u> 115 F. Supp. 3d 1336-37 (citing U.S.S.G. § 2J1.2(b)(1)(B)). The Court stated that, for the offense levels to apply,

> the United states must prove two elements by a preponderance of the evidence. First, K. Ulibarri's offense must involve "threatening to cause physical injury to a person." U.S.S.G. § 2J1.2(b)(1)(B). This element requires that K. Ulibarri "communicate[d an] intent to inflict [physical injury] on another[.]" Black's Law Dictionary 1618 . . . . Second, K. Ulibarri must have made that threat "in order to obstruct the administration of justice." U.S.S.G. § 2J1.2(b)(1)(B).

<u>United States v. Ulibarri</u>, 115 F. Supp. 3d at 1336. The Court determined that, although the United States showed that the defendant "communicated an intent to inflict physical injury" on someone, the United States failed to prove, by a preponderance of the evidence, that the

---

precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." <u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that <u>United States v. Hendrickson</u>, <u>United States v. Schmidt</u>, 353 F. App'x 132, (10th Cir. 2009), <u>United States v. Schmidt</u>, 353 F. App'x 132 (10th Cir. 2009), and <u>United States v. Banda</u>, 168 F. App'x 284 (10th Cir. 2006) have persuasive value with respect to a material issue, and will assist the Court in its preparation of this Memorandum Opinion and Order.

defendant "did so to obstruct the administration of justice." 115 F. Supp. 3d at 1336. The Court concluded that, because the United States failed to meet its burden on this second element, it would not impose the additional 8 offense levels under U.S.S.G. § 2J1.2(b)(1)(B). See United States v. Ulibarri, 115 F. Supp. 3d at 1336.

## LAW REGARDING RELEVANT CONDUCT FOR SENTENCING

In calculating an appropriate sentence, the Guidelines consider a defendant's "offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1, n.1(H). In United States v. Booker, the Supreme Court notes:

> Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction. That determination is particularly important in the federal system where crimes defined as, for example, "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by . . . extortion," . . . can encompass a vast range of very different kinds of underlying conduct.

543 U.S. at 250-51 (emphasis in original)(quoting 18 U.S.C. § 1951(a)). The Supreme Court's reasoning in United States v. Booker suggests that the consideration of real conduct is necessary to effectuate Congress' purpose in enacting the Guidelines.

Section 1B1.3(a) provides that the base offense level under the Guidelines "shall be determined" based on the following:

(1)      (A)      all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

           (B)      in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly

undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2)     solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3)     all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4)     any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a)(1)-(4).  The court may consider, as relevant conduct, actions that have not resulted in a conviction.  Pursuant to the commentary to U.S.S.G. § 6A1.3, evidentiary standards lower than beyond a reasonable doubt are permitted to show relevant conduct.  The court may rely upon reliable hearsay, so long as the evidence meets the preponderance-of-the-evidence standard.  See United States v. Vigil, 476 F. Supp. 2d 1231, 1245 (D.N.M. 2007)(Browning J.), aff'd, 523 F.3d 1258 (10th Cir. 2008).  Accord United States v. Schmidt, 353 F. App'x 132, 135 (10th Cir. 2009)(unpublished)("The district court's determination of 'relevant conduct' is a factual finding subject to a preponderance of the evidence standard, and clear error review.").  The evidence and information upon which the court relies, however, must have sufficient indicia of reliability.  See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

Supreme Court precedent on relevant conduct consists primarily of two cases: Witte v. United States, 515 U.S. 389 (1995), and United States v. Watts, 519 U.S. 148 (1997).  In Witte v.

United States, the Supreme Court upheld the use of uncharged conduct at sentencing against a double-jeopardy challenge. See 515 U.S. at 404-06. The defendant in Witte v. United States had been involved in an unsuccessful attempt to import marijuana and cocaine into the United States in 1990, and in an attempt to import marijuana in 1991. See 515 U.S. at 392-93. In March 1991, a federal grand jury indicted the defendant for attempting to possess marijuana with intent to distribute in association with the defendant's latter attempt to import narcotics. See 515 U.S. at 392-93. At sentencing, the district court concluded that, because the 1990 attempt was part of the continuing conspiracy, it was relevant conduct under U.S.S.G. § 1B1.3, and thus calculated the defendant's base offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes. See 515 U.S. at 394.

In September, 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with his activities in 1990. See 515 U.S. at 392-93. The defendant moved to dismiss the indictment, contending that he had already been punished for the cocaine offenses, because the court had considered those offenses relevant conduct at the sentencing for the 1991 marijuana offense. See 515 U.S. at 395. The district court agreed and dismissed the indictment, holding that punishment for the cocaine offenses would violate the prohibition against multiple punishments in the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States. See 515 U.S. at 395. The United States Court of Appeals for the Fifth Circuit reversed and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct." United States v. Witte, 25 F.3d 250, 258 (5th Cir. 1994). In reaching this holding, the Fifth Circuit acknowledged that its conclusion was contrary to other United States Courts of Appeals

opinions, including a Tenth Circuit opinion, that had previously considered this question.  See 25

F.3d at 255 n.19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the Courts of

Appeals and affirmed the Fifth Circuit decision.  See 515 U.S. at 395.  In holding that a district

court's consideration of the defendant's relevant conduct did not punish the defendant for that

conduct, the Supreme Court concluded that "consideration of information about the defendant's

character and conduct at sentencing does not result in 'punishment' for any offense other than

the one of which the defendant was convicted."  515 U.S. at 401.  The Supreme Court reasoned

that sentencing courts had always considered relevant conduct and "the fact that the sentencing

process has become more transparent under the Guidelines . . . does not mean that the defendant

is now being punished for uncharged relevant conduct as though it were a distinct criminal

offense."  515 U.S. at 402.  Sentencing enhancements do not punish a defendant for uncharged

offenses; rather, they reflect Congress' policy judgment "that a particular offense should receive

a more serious sentence within the authorized range if it was either accompanied by or preceded

by additional criminal activity."  515 U.S. at 403.

In United States v. Watts, the Supreme Court, in a per curiam opinion, relied upon Witte

v. United States and upheld, against a double-jeopardy challenge, a sentencing judge's use of

conduct for which the defendant had been acquitted.  See United States v. Watts, 519 U.S. at

149.  The Supreme Court noted that its conclusion was in accord with every United States Court

of Appeals -- other than the Court of Appeals for the Ninth Circuit -- and that each had

previously held that a sentencing court may consider conduct for which the defendant had been

acquitted, if the government establishes that conduct by a preponderance of the evidence.  See

519 U.S. at 149 (citing, e.g., United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir.

1991)).  The Supreme Court began its analysis with 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." United States v. Watts, 519 U.S. at 151 (quoting 18 U.S.C. § 3661).  According to the Supreme Court, 18 U.S.C. § 3661 embodies the codification of "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion."  United States v. Watts, 519 U.S. at 151-52.

Tenth Circuit case law adheres closely to the Supreme Court's results in Witte v. United States and United States v. Watts.  See United States v. Andrews, 447 F.3d 806, 810 (10th Cir. 2006)(applying Witte v. United States' holding to affirm that a career-offender enhancement does not violate the Fifth Amendment's Double Jeopardy Clause).  In United States v. Banda, 168 F. App'x 284 (10th Cir. 2006)(unpublished), the Tenth Circuit rejected a defendant's argument that it was "structural error" for a district court to find sentencing factors "by a preponderance of the evidence rather than the jury applying a beyond-a-reasonable-doubt standard."  168 F. App'x at 290.  The Tenth Circuit explained that "'[i]t is now universally accepted that judge-found facts by themselves do not violate the Sixth Amendment.  Instead, the constitutional error was the court's reliance on judge-found facts to enhance the defendant's sentence mandatorily.'"  168 F. App'x at 290 (quoting United States v. Lauder, 409 F.3d 1254, 1269 (10th Cir. 2005)).

In United States v. Coleman, the defendant appealed the district court's sentence enhancement for firearms possession after he was convicted of conspiracy to possess and possession of a controlled substance with intent to distribute, but was acquitted of using or

carrying a firearm during and in relation to a drug trafficking crime.  See 947 F.2d at 1428.  The Tenth Circuit acknowledged that courts had taken various positions on whether a sentence may be enhanced for firearms possession despite a defendant's acquittal on firearms charges.  See 947 F.2d at 1428-29 (citing United States v. Duncan, 918 F.2d 647, 652 (6th Cir. 1990)("[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense."); United States v. Rodriguez, 741 F. Supp. 12, 13-14 (D.D.C. 1990)(refusing to apply 2-level enhancement for firearms possession, because "[t]o add at least 27 months to the sentence for a charge of which the defendant was found not guilty violates the constitutional principle of due process and the ban against double jeopardy")).

Without discussion related to the standard of proof a sentencing court should use to make factual findings, the Tenth Circuit held that the district court did not err in enhancing the defendant's sentence for possession of a firearm.  See United States v. Coleman, 947 F.2d at 1429.  The Tenth Circuit based its conclusion on evidence that: (i) individuals at the arrest scene handled the weapons at will; (ii) the weapons were handled at will by individuals who lived at the house; and (iii) the weapons were kept for the protection of conspiracy participants and the narcotics involved.  See 947 F.2d at 1429.  The Tenth Circuit summarized that, in reviewing relevant federal case law, it found "persuasive the decisions that have allowed a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted."  947 F.2d at 1429.

In United States v. Washington, 11 F.3d at 1510, the defendant argued that the United States needed to prove drug quantities used as relevant conduct to establish a defendant's offense level by clear-and-convincing evidence, rather than by a preponderance of the evidence.  See 11

F.3d at 1512.  The defendant objected to his sentencing, because the drug quantity that the district court considered as relevant conduct, and which the court found by a preponderance of the evidence, increased his Guidelines sentencing range from 210-262 months to life in prison. See 11 F.3d at 1515.  The defendant argued "that because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required."  11 F.3d at 1515.  Although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard."  11 F.3d at 1516 (citing McMillan v. Pennsylvania, 477 U.S. 79, 84 (1986)).  See United States v. Sangiovanni, 2014 WL 4347131, at *22-26 (D.N.M. 2014)(Browning, J.)(concluding that a sentencing court can cross reference from the Guidelines that correspond to the defendant's crime of conviction to the Guidelines for another, more harshly punished crime, if it can be established by a preponderance of the evidence that the defendant committed the more serious crime); United States v. Cervantes-Chavez, 2014 WL 6065657, at *14-15 (D.N.M. 2014)(Browning, J.)(cross referencing from the guideline for being an illegal alien in possession of a firearm to the drug-possession guideline after finding by a preponderance of the evidence that the defendant committed a drug-possession crime).

The Court has previously held that it may consider a defendant's refusal to answer questions for the PSR, while not drawing an adverse inference from the refusal.  See United States v. Goree, 2012 WL 592869, at *11 (D.N.M. 2012)(Browning, J.).  The Court has also held that, although it can consider a defendant's silence about information regarding herself or others engaging in criminal conduct, it will not rely on that silence to increase the defendant's sentence.

See United States v. Chapman, 2012 WL 257814, at *13 n.5 (D.N.M. 2012)(Browning, J.). Finally, the Court has held that a defendant's "aggression towards other individuals, and the murder he may have attempted to orchestrate while incarcerated" is relevant information which the Court can consider in fashioning a proper sentence. United States v. Romero, 2012 WL 6632493, at *23 (D.N.M. 2012)(Browning, J.).

## ANALYSIS

The Court concludes that: (i) Tapia's Aggravated Assault conviction does not call for 3 criminal history points under U.S.S.G. § 4A1.2(e), because the Court will use the recently amended sentence for 238 days, not the originally imposed 18 month sentence; (ii) Tapia's base offense level is 18 under U.S.S.G. § 2K2.1(b)(6)(B), because Tapia committed the firearm offense in connection with another felony offense; (iii) the Court will assess 3 criminal history points for Tapia's prostitution- and automobile theft-related convictions, because they are not relevant conduct to his instant offense; (iv) Tapia's criminal history score is 11, and his criminal history category is V; and (v) the Court will not issue a downward adjustment or grant additional custody confinement credit for time served on Tapia's prostitution- and automobile theft-related convictions because the convictions are not relevant conduct to his instant offense.

## I. THE COURT WILL NOT ASSESS ANY CRIMINAL HISTORY POINTS FOR TAPIA'S 1997 AGGRAVATED BATTERY CONVICTION, BECAUSE THE COURT WILL USE TAPIA'S AMENDED EIGHT-MONTH SENTENCE, AND NOT THE STATE COURT'S ORIGINAL BUT ERRONEOUS EIGHTEEN MONTH SENTENCE.

In PSR's ¶ 41, the USPO adds 3 criminal history points under U.S.S.G. § 4A1.1(a) for a criminal conviction for one count of Aggravated Battery with a Deadly Weapon. See PSR ¶ 41, at 9. The PSR states that, on May 27, 1994, Tapia was arrested, and on June 30, 1997, the Second Judicial District Court in Albuquerque, New Mexico imposed a sentence of three years

imprisonment, with eighteen months suspended and eighteen months supervised probation.  See PSR ¶ 41, at 9.  The PSR adds three criminal history points under § 4A1.1(a), which states: "Add 3 points for each prior sentence of imprisonment exceeding one year and one month."  U.S.S.G. § 4A1.1(a).  The Court notes that, based on the briefing and other documents submitted for sentencing, it appears that Tapia was sentenced on September 22, 1997, and not on June 30, 1997.

In Tapia's Objections, Tapia argues that 0 criminal history points should be assessed for his 1997 Aggravated Battery with a Deadly Weapon sentence described in the PSR's ¶ 41, at 9-10, because that sentence does not meet either U.S.S.G. § 4A1.2(e)(1) or (e)(2)'s time periods.  See Objections ¶ 25, at 18.  First, Tapia argues that § 4A1.2(e)(2) does not apply, because the 1997 Aggravated Battery with a Deadly Weapon sentence ended in 1999 -- more than 10 years before the commencement of the instant offense.  See Objections ¶ 25, at 18.  Second, Tapia argues that § 4A1.2(e)(1) does not apply, because, although his 1997 Aggravated Battery with a Deadly Weapon  sentence was imposed within 15 years of the instant offense, the sentence was for less than a year and one month.  See Objections ¶ 25, at 18.  Tapia contends that although the state court originally pronounced an 18 month sentence of imprisonment, it recently acknowledged that it had made a mistake, and corrected the sentence to reflect a sentence of 238 days.  See Findings of Fact ¶¶ 14-16, at 4.  Consequently, Tapia asserts that his criminal history points go from 3 to 0 under U.S.S.G. § 4A1.2(e)(3), which, according to Tapia, states: "Any prior sentence not within the time periods specified [in (e)(1) or (2)] is not counted."  Objections

¶ 25, at 18 (brackets in Objections).[8]  He then argues that, because 0 criminal history points are to be assessed pursuant to the PSR's ¶ 41, at 9-10, "his base offense level must also be reduced from 20 under U.S.S.G. § 2K2.1(a)(4)(A) to 18 under U.S.S.G. § 2K2.1(a)(5)."  Objections ¶ 25, at 18.  The Court concludes that Tapia's 1997 Aggravated Battery with a Deadly Weapon conviction calls for 0 criminal history points under U.S.S.G. § 4A1.2(e)(3), because it was imposed more than a ten years before the instant offense, and, pursuant to the corrected sentence, was for less than a year and one month.

**A.    TAPIA'S 1997 AGGRAVATED BATTERY WITH A DEADLY WEAPON SENTENCE IS NOT WITHIN THE APPLICABLE TIME PERIOD FOR U.S.S.G. § 4A1.2(e)(2).**

Section 4A1.2(e)(2) states that a prior sentence is counted if it "was imposed within ten years of the defendant's commencement of the instant offense . . . ."  U.S.S.G. § 4A1.2(e)(2).  Here, the sentence described in the PSR's ¶ 41, at 9-10, was imposed on September 22, 1997,

---

[8]Section 4A1.2(e) states:

(1)    Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted.  Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

(2)    Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

(3)    Any prior sentence not within the time periods specified above it not counted.

(4)    The applicable time period for certain sentences resulting from offenses committed prior to age eighteen is governed by § 4A1.2(d)(2).

U.S.S.G. § 4A1.2(e).

and the instant offense commenced on April 11, 2012, when Tapia was arrested.  See PSR ¶¶ 12-13, at 5; id. ¶ 41, at 9-10.  Accordingly, Tapia is correct that the sentence described in the PSR's ¶ 41, at 9-10, cannot properly be counted under § 4A1.2(e)(2), because it was not imposed within ten years of the commencement of the instant offense.

> **B.    U.S.S.G. § 4A1.2(e)(1) DOES NOT APPLY TO TAPIA'S 1997 AGGRAVATED BATTERY SENTENCE, BECAUSE THE SENTENCE, AS RECENTLY CORRECTED, IS FOR LESS THAN ONE YEAR AND ONE MONTH.**

Section 4A1.2(e)(1) states in relevant part: "Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted."  U.S.S.G. § 4A1.2(e)(1).  Application Note 2 to U.S.S.G. § 4A1.2 states that the phrase "sentence of imprisonment" is "based on the sentence pronounced, not the length of time actually served."  U.S.S.G. § 4A1.2 n.2.  Here, on September 22, 1997, the Second Judicial District Court pronounced a prison sentence of 18 months.  See PSR ¶ 41, at 9.  Tapia has now obtained, however, an amended judgment, which states that he is to be "imprisoned for a term of 3 years of which 28 months and 3 days is suspended for an actual term of imprisonment of 238 days."   Amended Judgment, Partially Suspended Sentence & Commitment Pro Nunc Tunc at 1, filed August 15, 2016 (Doc. 98-6)("Amended Judgment").  The question is therefore whether the Court should use the original pronounced prison sentence of 18 months or the amended pronounced prison sentence of 238 days to determine whether § 4A1.2(e)(1) applies.  If the Court uses the original pronounced sentence of 18 months, then § 4A1.2(e)(1) applies, and 3 criminal history points should be assessed, because the sentence was imposed within fifteen years of the instant offense, which took place on April 11, 2012.  If the Court uses the amended pronounced prison sentence of 238 days, then § 4A1.2(e)(1) does not

apply, because the "sentence of imprisonment" did not exceed one year and one month.

In the Third Addendum, the USPO cites to United States v. Paul Pech-Aboytes, 562 F.3d 1234 (10th Cir. 2009), in which -- the USPO contends -- the defendant sought to "modify his state sentences nunc pro tunc" after his guilty plea and initial PSR for "the express purpose of avoiding a criminal history point in his federal drug sentencing." Third Addendum at 2. The USPO asserts that, in United States v. Paul Pech-Aboytes the Tenth Circuit ruled that the district court correctly applied U.S.S.G. § 4A1.2(j) to conclude that the defendant's probation term was shortened nunc pro tunc for reasons unrelated to innocence or errors of law. See Third Addendum at 2. According to the USPO, the Tenth Circuit held that the defendant was therefore ineligible for a safety-valve reduction under U.S.S.G. § 5C1.2. See Third Addendum at 2. The USPO asserts that, under United States v. Paul Pech-Aboytes, the USPO properly assesses 3 criminal history points, because the state court "shortened the term of custody imposed based on the amount of custody time he served for reasons unrelated to his innocence or errors of law . . . ." Third Addendum at 2 (citing PSR's ¶ 41, at 9-10). Tapia responds that United States v. Paul Pech-Aboytes is inapposite, because that case concerns a defendant who moved a state court to modify his sentence so that his probation period ended before the offense's date, see Tr. 36:15-25 (Cruz), whereas, in his case, he "did not seek this correction 'for reasons unrelated to . . . errors of law,' he sought the correction to bring the Judgment & Sentence in line with his actually imposed sentence," Supp. Amended Objections at 5 (quoting Third Addendum at 2).

The Court concludes that, although United States v. Paul Pech-Aboytes applies to this case, its reasoning requires the Court to use Tapia's aggravated battery sentence as recently corrected, not as originally pronounced. In United States v. Paul Pech-Aboytes, the defendant argued that the district court should not have assessed 2 criminal history points for a

methamphetamine offense while on probation from a prior conviction, because the defendant, after the USPO drafted its initial PSR, "successfully obtained the California nunc pro tunc order which stated his probation terminated prior to the date of his methamphetamine offense." 562 F.3d at 1237. In its analysis, the Tenth Circuit took the Guidelines' approach to determining whether to count "expunged convictions" towards Guidelines calculations and applied it to whether to count a reduced sentence. 562 F.3d at 1239 (citing U.S.S.G. § 4A1.2(j)). Specifically, the Tenth Circuit looked to § 4A1.2's application notes, one of which states that when a defendant's previous conviction has been "set aside" or the defendant has been "pardoned for reasons unrelated to innocence or errors of law, *e.g.*, in order to restore civil rights or to remove the stigma associated with a criminal conviction," those convictions should be counted when calculating the defendant's sentence. 562 F.3d at 1239 (quoting U.S.S.G. § 4A1.2 n.10). Another application note states that sentences "resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior case are not to be counted." 562 F.3d at 1239 (quoting U.S.S.G. § 4A1.2 n.6). According to the Tenth Circuit, the Guidelines' application notes suggest that district courts "should count previous convictions unless they have been set aside because of a finding of innocence or legal error," and that "a defendant's obtaining a nunc pro tunc order which shortened a probationary period for a reason unrelated to errors of law or innocence is not a valid basis for negating otherwise applicable criminal history points." 562 F.3d at 1239.

Tapia's case presents a similar but factually distinct question: whether the state court's

correction of an erroneous sentence to reflect the court's intended sentence length[9] is a correction made because of error of law, as the Guidelines contemplate in § 4A1.2's application notes. The Court has uncovered no on-point case in the Tenth Circuit or elsewhere to provide guidance. Accordingly, the Court will begin its analysis with the Guidelines' plain language.

Section 4A1.2's Application Note 10 states that a defendant's prior sentence should not be counted if the defendant was pardoned or the sentence was set aside "for reasons unrelated to innocence of errors of law, *e.g.*, in order to restore civil rights or to remove the stigma associated with a criminal conviction." U.S.S.G. § 4A1.2 n.10. The Tenth Circuit interprets the Guidelines "according to accepted rules of statutory construction." United States v. Nacchio, 573 F.3d 1062, 1066 (10th Cir. 2009). The Court thus "first look[s] at the guideline's plain language and, if unambiguous, appl[ies] the words of the [Guidelines] as they appear on [their] face." United States v. Rosales-Valdez, 375 F. Supp. 2d 1152, 1163 (D.N.M. 2004)(Browning, J.). See United

---

[9]In its Finding of Fact, the state district court stated:

   7.    Mr. Tapia's documented time in custody from arrest on June 1, 1994, until sentencing on September 22, 1997, as reflected by the court record, was actually 238 days, or approximately eight (8) months, not the 18 months as reflected in the Judgment & Sentence of May 5, 1998.

   . . . .

   14.    This Court finds that Mr. Tapia's pre-sentence confinement time constituted the actual sentence imposed.

   15.    However, this Court finds that the original Judgment and Sentence contains an inaccurate accounting of Mr. Tapia's pre-sentence confinement time, therefore an incorrect recitation of the actual sentence imposed.

   16.    The August 11, 2016, Amended Judgment and Sentence Nunc Pro Tunc accurately reflects the record and intent of the parties.

Findings of Fact ¶¶ 7, 14-16, at 6-7.

States v. Ulibarri, 115 F. Supp. 3d 1308, 1331 (D.N.M. 2015). Although the Tenth Circuit has not considered whether to apply statutory construction principles when interpreting the Guidelines' commentary, the United States Courts of Appeals for the Second, Fourth, Fifth, Ninth, and Eleventh Circuits have found it appropriate to do so. See United States v. Savin, 349 F.3d 27, 36 (2d Cir. 2003)("We . . . apply these traditional principles to interpretive or explanatory guideline commentary . . . ."); United States v. Curtis, 934 F.2d 553, 556 (4th Cir. 1991)(interpreting the Guidelines' commentary according to statutory construction principles); United States v. McKinney, 520 F.3d 425, 429 (5th Cir. 2008)("We apply ordinary rules of statutory construction when interpreting the commentary."); United States v. Alvarez-Hernandez, 478 F.3d 1060, 1066 (9th Cir. 2007)(interpreting the Guidelines' commentary according to statutory construction principles); United States v. Perez, 366 F.3d 1178, 1182 (11th Cir. 2004) ("Our interpretation of the sentencing guidelines and accompanying commentary is governed by traditional rules of statutory construction."). "The rule of lenity requires courts to interpret ambiguous statutes, including the Sentencing Guidelines, in favor of criminal defendants." United States v. Gay, 240 F.3d 1222, 1232 (10th Cir. 2001). See United States v. Randall, 472 F.3d 763, 766 (10th Cir.2006)("Where a Sentencing Guideline is ambiguous, the rule of lenity requires the court to interpret it in favor of criminal defendants. Nevertheless, this rule applies only where there is a grievous ambiguity or uncertainty in the language and structure of a provision." (internal citations and quotations omitted)).

At first glance, § 4A1.2's Application Note 10 does not appear to help Tapia, because it expressly contemplates not counting sentences that have been changed due to "innocence or errors of law." The state court did not misinterpret a statute or act without jurisdiction; it made an error of fact: the court sentenced Tapia to time served while believing, incorrectly, that Tapia

had served 18 months.  Application Note 10 does not, however, end at the mention of "errors of law"; the succeeding clause adds additional information, by way of two illustrative examples: "*e.g.*, in order to restore civil rights or to remove the stigma associated with criminal conviction."

In interpreting statutes, courts begin with the presumption that all words and phrases have meaning, and that courts should, whenever possible, avoid interpretations that render certain words and phrases void or superfluous.  See Oxy USA, Inc. v. Babbitt, 268 F.3d 1001, 1006 (10th Cir. 2001)(stating that courts must avoid, "wherever possible, a statutory interpretation that would render superfluous other provisions in the same enactment"); Lamb v. Thompson, 265 F.3d 1038, 1051 (10th Cir. 2001)(reiterating the "cardinal principle that it is our duty to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section" (alteration omitted)).  To conclude that the phrase "reasons unrelated to innocence or errors of law" expressly excludes situations in which a sentence's length is corrected for a clerical or factual error would be to ignore any possible meaning that the illustrative examples could provide.  Those two examples -- "*e.g.*, in order to restore civil rights or to remove the stigma associated with a criminal conviction" -- must shape the Application Note's meaning in some way; otherwise their inclusion would be superfluous.  What the examples have in common is the court's motive to help a defendant avoid his or her conviction's secondary consequences, and not to amend the sentence to better reflect the court's superior and more up-to-date understanding of the case itself.  Consequently, in the Court's view, § 4A1.2 Application Note 10 reflects the Guidelines' drafters' intent to have the federal sentencing courts examine the reason why a sentence was shortened or expunged, and, if the court amended the sentence for any reason other than to better reflect an updated and more accurate understanding of the case, then the federal sentencing should count the conviction's sentence as it was originally imposed.

Such an interpretation is consistent with how the Tenth Circuit, other Circuit Courts of Appeals, and legal scholars have interpreted and applied § 4A1.2 Application Note 10: that allowing a state court to amend a defendant's old sentence to help him or her avoid the Guidelines' sentence enhancements undermines the Guidelines' purpose and permits a state court to exercise too much control over a federal court's sentencing process.  See United States v. Pech-Aboytes, 562 F.3d at 40 (concluding that allowing the state court to help the defendant avoid an enhanced sentence would undermine the Guidelines' purpose to punish a repeat offender harshly, and because the Guidelines "intended to capture, via an increase in criminal history points, the very behavior [the defendant] was attempting to avoid: the commission of a crime while under a probationary sentence"); United States v. Martinez-Cortez, 354 F.3d 830, 831-33 (8th Cir. 2004)(determining that, where the defendant "sought and obtained a reduction of the first time of probation . . . for the express purpose of avoiding a criminal history point in his federal drug sentencing," the district court must assess those points "given the timing and purpose of [the defendant's] state sentence reductions"); United States v. Yepez, 704 F.3d 1087, 1091 (9th Cir. 2012)(determining that "[s]tate courts cannot be given the authority to change a defendant's federal sentence by issuing a ruling that alters history and the underlying facts"); United States v. Alba-Flores, 577 F.3d 1104, 1111 (9th Cir. 2009)("We note that the same odor of gaming the federal sentencing system that was emanating in the *Martinez-Cortez* and *Pech-Aboytes* cases emanates from this one."); Andrew Tan, Breaking Bad Sentencing Habits: How State Courts' Retroactive Modifications of Probation Terms Affect Federal Mandatory Sentencing, 86 S. Cal. L. Rev. 1079, 1109-10 (2013)(stating that the two "major criticism[s]" of allowing state nunc pro tunc orders to affect federal sentencing are that (i) mandatory  minimums are meant to limit discretion when sentencing recidivists, and (ii) state courts would enjoy more sentencing discretion than

federal courts have). Moreover, while the state court made a factual error in its calculations and original sentence, the end result is that the original sentence and judgment were "legally" erroneous. The state district court could have been reversed. A broad definition of "legal error" could encompass the error, because it was "legally" wrong.

The Court determines that the state court amended Tapia's aggravated battery sentence to accurately reflect its understanding of his case, and does not represent the state court's attempt to help Tapia avoid a sentence enhancement.[10] Accordingly, the Court will use Tapia's corrected sentence of 238 days, and not the originally imposed sentence of 18 months. A 238 day sentence imposed more than 10 years before the defendant's instant offense does not meet the standards in either § 4A1.2(e)(1) or § 4A1.2(e)(2). Because neither provision applies, Tapia's aggravated battery sentence is not counted as a prior sentence, see § 4A1.2(e)(3) ("Any prior sentence not within the time periods specified above is not counted."), and does not call for any criminal history points.

**C.** **EVEN IF <u>UNITED STATES V. PAUL PECH-ABOYTES</u> DID NOT APPLY, THE COURT WOULD CONCLUDE THAT § 4A1.2(e)(1)'S PLAIN LANGUAGE SUPPORTS USING TAPIA'S CORRECTED SENTENCE.**

U.S.S.G. § 4A1.2(e)(1) states that a prior sentence of imprisonment is counted in

---

[10]There is nothing before the Court suggesting that the state court corrected its original erroneous judgment to help Tapia avoid a harsher sentence. In his state court motion, Tapia did not explain how correcting the error would help him at sentencing, stating only that "Mr. Tapia learned of these clerical errors . . . in relation to a pending federal case," and that the "error has been detrimental and inhibited resolution of his federal case." Motion to Correct Clerical Error to Judgment & Sentence Pro Nun Tunc ¶¶ 21-23, at 3-4 (dated March 8, 2016), filed June 6, 2016 (Doc. 88-2). In its Findings of Fact, the state court stated that it corrected the sentence to accurately reflect the state court's original intent of 238 days. See Findings of Fact ¶ 11, at 3 ("This court finds that it is necessary that the Judgment and Sentence conform to the record."). There is no suggestion in the record, in the state court's Findings of Fact, in the PSR, or in the parties' briefs that the error is not genuine or that it was manufactured in any way to help Tapia in his federal case.

calculating a defendant's criminal history if it (i) "exceed[ed] one year and one month"; and

(ii) "was imposed within fifteen years of the defendant's commencement of the instant offense."

Tapia's Aggravated Battery with a Deadly Weapon conviction satisfies the second element: the

Second Judicial District Court pronounced Tapia's sentence on September 22, 1997, see

Findings of Fact ¶ 3, at 1, and Tapia committed the instant offense roughly 14½ years later, on

April 11, 2012, see PSR at 1.  Whether Tapia's prior sentence for Aggravated Battery with a

Deadly Weapon satisfies that first element is less clear.  On one hand, a court imposed a sentence

of imprisonment of more than a year and a half by sentencing Tapia to 18 months.  See PSR ¶

41, at 9; Findings of Fact ¶ 8, at 3.  On the other hand, however, the same court recently

recognized that it intended to sentence Tapia to pre-sentence confinement time, but incorrectly

stated that amount to be 18 months, when, in reality, Tapia had served 238 days.  See Findings of

Fact ¶¶ 14-16, at 4.  On August 11, 2016, the Second Judicial District Court issued an Amended

Judgment for State v. Tapia, Case No. D-202-CR-1994-1211, stating that Tapia's sentence is

"suspended for an actual term of imprisonment of 238 days."  Amended Judgment at 1.  In its

Findings of Fact, the state district court asserts that, in issuing its Amended Judgment, it "is not

modifying, vacating, or reducing the original sentence imposed," but rather is "correcting the

clerical error . . . to accurately reflect and conform to the record."  Findings of Fact ¶¶ 12-13, at

3-4.

Even if the Court determined that United States v. Pech-Aboytes does not apply, and, therefore,

the Court would not need to make this decision pursuant to § 4A1.2 Application Notes 6 and 10,

§ 4A1.2(e)(1)'s plain language indicates that the Court would use Tapia's corrected Aggravated

Assault sentence for 238 days, and not the originally imposed 18 months.  The Court finds no

factually on-point cases in the Tenth Circuit, any other Circuit Courts of Appeals, or New

Mexico courts considering whether a sentence corrected for clerical or factual error should count as the sentence originally imposed when calculating the defendant's criminal history. The Court notes that the rule of lenity "requires courts to interpret ambiguous statutes, including the Sentencing Guidelines, in favor of criminal defendants." United States v. Gay, 240 F.3d 1222, 1232 (10th Cir. 2001). See United States v. Randall, 472 F.3d 763, 766 (10th Cir. 2006)("Where a Sentencing Guideline is ambiguous, the rule of lenity requires the court to interpret it in favor of criminal defendants. Nevertheless, this rule applies only where there is a grievous ambiguity or uncertainty in the language and structure of a provision.")(internal citations and quotations omitted). With no case law offering guidance, the Court would conclude that the rule of lenity supports preferring a later corrected sentence over an earlier, incorrect sentence, particularly in this case, where the sentencing court made express factual findings documenting its initial error, and declaring that it "is not modifying, vacating, or reducing the original sentence imposed," but rather is "correcting the clerical error . . . to accurately reflect and conform to the record." Findings of Fact ¶¶ 12-13, at 3-4.

## II.  TAPIA'S BASE OFFENSE LEVEL IS 18 UNDER U.S.S.G. § 2K2.1(b)(6)(B), BECAUSE HE COMMITTED THE INSTANT FIREARMS OFFENSE IN CONNECTION WITH ANOTHER FELONY OFFENSE.

U.S.S.G. § 2K2.1 states that a defendant's base offense level is 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense[.]"  U.S.S.G. § 2K2.1(a)(4)(A).  The Guidelines also state that a felony conviction triggers § 2K2.1(a)(4)(A) only if that conviction also received criminal history points under § 4A1.1(a), (b), or (c).  See U.S.S.G. § 2K2.1, n.10. Because the Court has determined that Tapia's 1997 conviction calls for no criminal points, that conviction cannot satisfy § 2K2.1(a)(4)(A).

Tapia's conviction does not meet the requirements of §§ 2K2.1(a)(5), (a)(6), or (a)(8). Therefore, before moving to § 2K2.1(b)'s Specific Offense Characteristics, Tapia's base offense level is 12, pursuant to § 2K2.1(a)(7).

Under Specific Offense Characteristics, when a defendant "used or possessed any firearm or ammunition in connection with another felony offense," § 2K2.1(b)(6)(B) calls for the base offense level to increase by 4 levels, and, "if the resulting offense level is less than level 18, increase to level 18." U.S.S.G. § 2K2.1(b). For § 2K2.1(b)(6)(B) purposes, "[a]nother felony offense" means "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1, App. No. 14(C). When considering whether § 2K2.1(b)(6)(B) applies, courts "must consider the relationship between the instant offense and the other offense, consistent with relevant conduct principles." U.S.S.G. § 2K2.1, App. No. 14(E) (citing U.S.S.G. § 1B1.3(a)). The Tenth Circuit has explained:

> Two offenses qualify as part of the "same course of conduct" if "they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." We consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." In weighing these factors, we utilize the "sliding scale" approach mandated by U.S.S.G. § 1B1.3.

> When one of the above factors is absent, a stronger presence of at least one of the other factors is required. For example, where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity.

> [W]e have construed relevant conduct to cover a broad range of activities . . . .

United States v. Damato, 672 F.3d 832, 839-40 (10th Cir. 2012)(Lucero, J.)(quoting U.S.S.G.

§ 1B1.3 cmt. 9(B))(citations omitted).  The court may consider, as relevant conduct, actions that have not resulted in a conviction.  See U.S.S.G. § 2K2.1, App. No. 14(C).  Pursuant to the commentary to U.S.S.G. § 6A1.3, evidentiary standards lower than beyond a reasonable doubt are permitted to show relevant conduct.  The court may rely upon reliable hearsay, so long as the evidence meets the preponderance-of-the-evidence standard.  See United States v. Vigil, 476 F. Supp. 2d 1231, 1245 (D.N.M. 2007)(Browning J.).  Accord United States v. Schmidt, 353 F. App'x 132, 135 (10th Cir. 2009)(unpublished)("The district court's determination of 'relevant conduct' is a factual finding subject to a preponderance of the evidence standard, and clear error review.").  The evidence and information upon which the court relies, however, must have sufficient indicia of reliability.  See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

Here, APD detective recovered from Tapia's vehicle three "small baggies of white powdery substance which tested presumptively positive for methamphetamine," one "small baggie with a brown rocky substance which tested presumptively positive for heroin," and several small baggies with "a green leafy substance consistent with marijuana."  PSR ¶ 20, at 6-7.  The PSR notes:

> APD detectives noted the amount of narcotics found in Marc Tapia's vehicle  exceeded that of personal use. Detectives also concluded Mr. Tapia was in possession of narcotics with the intent to distribute. The location of the narcotics was clearly visible by the driver of the vehicle, who was identified as Mr. Tapia, and the location of the firearm showed Mr. Tapia was able to easily access the firearm to protect the narcotics of which he was found in possession.

PSR ¶ 21 at 7 (emphases added).

The Court concludes that -- based on a preponderance of the evidence -- Tapia committed the instant firearm offense in connection with another felony offense, because Tapia was in a vehicle in close proximity to a weapon as well as narcotics which APD detectives concluded Tapia intended to distribute. See United States v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1317 (D.N.M. 2014)(Browning, J.)(concluding that the defendant's gun-possession offense was relevant conduct to his drug offense, because he "possessed both items in the same place, his residence; and . . . he committed the gun-possession offense to ensure his personal safety and otherwise aid in his continued commission of drug offenses"). Consequently, Tapia's base offense level is 18 pursuant to § 2K2.1(b)(6)(B).

III. **TAPIA'S STATE CONVICTION FOR RECEIVING OR TRANSFERRING A STOLEN MOTOR VEHICLE IS A "PRIOR SENTENCE" UNDER U.S.S.G. § 4B1.2(b), AND, THEREFORE, THE USPO PROPERLY ASSESSED 3 CRIMINAL HISTORY POINTS.**

Tapia argues that the USPO should not apply three criminal points for prostitution-related charges in case No. D-202-CR-2012-3528, because those charges are "relevant conduct" to the instant offense -- and therefore not a distinct prior sentence -- pursuant to U.S.S.G. § 4A1.2, n.1. Objections ¶¶ 11-17; 7-11 (citing PSR ¶ 47, at 13). The USPO responds that the charges in case No. D-202-CR-2012-3528 are similar to the instant offense, but are not related because they refer to events that "occurred between January 5 and 13, 2012, with the exception of a charge for receiving/transferring a stolen motor vehicle that occurred between April 2, 2012 and June 12, 2012." Second Addendum at 1-2. In the Tenth Circuit, courts determine whether a prior offense is related to the instant offense by "examin[ing] several factors, including the similarity, temporal proximity, and regularity of the instant offense and the prior sentence." United States v. Torres, 182 F.3d 1156, 1160 (10th Cir. 1999)(citing United States v. Walling, 936 F.2d 469,

471 (10th Cir. 1991)).  The United States bears the burden to "disprove the relevancy of prior conduct asserted to increase a defendant's criminal history score" by a preponderance of the evidence.  United States v. Torres, 182 F.3d at 1163 (emphasis omitted).  The United States has met this burden.  Although the USPO's bare assertions that the conduct in case No. D-202-CR-2012-3528 was temporally distinct from the instant offense would not, on its own, demonstrate that the conduct is more likely than not unrelated to the instant offense, the Court is satisfied that charge for "Receiving or Transferring Stolen Motor Vehicle," see PSR ¶ 47, at 13, is unrelated to the instant offense because, as the USPO points out, the instant offense's discovery does not indicate that the car Tapia was driving was stolen, see Second Addendum at 1-2.  The "Receiving or Transferring Stolen Motor Vehicle" charge is enough to trigger § 4A1.1(a), because that charge alone called for a sentence of 18 months in custody.  See PSR ¶ 47, at 13.

Tapia also argues that, if the Court determines that these cases are not related, then the Court should apply 1 criminal history point pursuant to § 4A1.1(c), not 3 points, because Tapia has appealed Case No. D-202-CR-2012-03528, and, under New Mexico law, appealed cases "have the effect of a stay of execution of the sentence during the pendency of that appeal." Objections ¶17, at 11 (citing N.M. Stat. Ann. § 31-11-1(a)).  The Court will assess 3 points, and not 1 point, because the Guidelines make clear that "[i]n the case of a prior sentence, the execution of which has been stated pending appeal, § 4A1.1(a), (b), (c), (d), and (e) shall apply as if the execution of such sentence had not been stayed."  U.S.S.G. § 4A1.2(l).

## IV.    TAPIA'S CRIMINAL HISTORY SCORE IS 11, AND HIS CRIMINAL HISTORY CATEGORY IS V.

As established above, Tapia's 1997 conviction does not call for any criminal history points.  See supra at 30-41.  The USPO's conclusion that Tapia's criminal history points come to

14 must be lowered by 3 points. Consequently, Tapia's criminal history point total is 11, which means that his criminal history category is V. <u>See</u> USA Response at 2 (stating that the United States "does not object to having the Defendant sentenced within the sphere of a criminal category of v").

## V. THE COURT WILL NOT GRANT A DOWNWARD ADJUSTMENT PURSUANT TO U.S.S.G. § 5G1.3(b), NOR GRANT ADDITIONAL CUSTODY CONFINEMENT CREDIT, BECAUSE TAPIA HAS NOT MET HIS BURDEN OF PROOF THAT HIS STATE CONVICTIONS ARE RELEVANT CONDUCT TO <u>THE INSTANT OFFENSE</u>.

In the Tenth Circuit, "the law is well established that 'the defendant shall bear the burden of proof for sentence decreases.'" <u>United States v. Lopez-Macias</u>, 661 F.3d 485, 494 (10th Cir. 2011)(quoting <u>United States v. Williams</u>, 374 F.3d 941, 947 (10th Cir. 2004)). Here, Tapia argues that he "should be credited a minimum of 30 months toward his federal sentence for the relevant conduct," because he was "convicted of charges arising on the same date and time from the same circumstances and incident as the present case." Objections ¶ 21, at 13. Tapia asserts that his state convictions in Case No. D-202-CR-2012-03528 were for prostitution-related charges "arising on April 11, 2012." Objections ¶ 13(A). The USPO, however, states that those charges arose from events in January, 2012. <u>See</u> Second Addendum at 1-2. Tapia has not provided any evidence suggesting that the USPO is incorrect on this point. Consequently, the Court will not grant Tapia's request for a downward adjustment pursuant to U.S.S.G. § 5G1.3(b).

**IT IS ORDERED** that Defendant's Amended Objections to Presentence Report, Motions for Downward Variance and Departure, and Motion to Run Sentence Concurrent to State Sentence, filed August 15, 2016 (Doc. 98) is granted in part and denied in part. The Court sustains Defendant Marc Tapia's Objection that his Aggravated Battery with a Deadly Weapon

conviction, <u>see</u> Pre-Sentence Report ¶ 41, at 9-10, dated October 2, 2015, does not call for 3

criminal history points, but overrules all other Objections.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James D. Tierney
  Acting United States Attorney
Kimberly Brawley
David M. Walsh
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

David C. Serna
David C. Serna Attorney at Law
Albuquerque, New Mexico

      *Attorney for the Defendant*