**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                      No. CR 12-3012 JB

MARC TAPIA, a/k/a Mark Anthony Russel,
a/k/a, Mark Lovato, a/k/a Anthony Tapia,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's oral Objections to the Presentence Investigation Report, disclosed on October 2, 2017, filed November 21, 2017 (Doc. 117)("PSR"). The Court held a sentencing hearing on December 15, 2017. <u>See</u> Sentencing Minute Sheet, filed December 15, 2017 (Doc. 123). The primary issues are: (i) how many criminal history points the Court should assess for Defendant Marc Tapia's convictions for promoting prostitution, accepting the earnings of a prostitute, transferring or receiving stolen vehicles, possession of a controlled substance, and aggravated fleeing from a law enforcement officer, which depends on whether the sentences were suspended and whether the offenses were relevant conduct to the instant offense; and (ii) whether the Court should adjust Tapia's sentence in light of the time served for his promoting prostitution and accepting the earnings of a prostitute convictions, which depends on whether those offenses are relevant conduct to the instant offense. The Court concludes that: (i) the Court will not assess 3 criminal history points for Tapia's receiving or transferring a stolen motor vehicle conviction, because his sentence was suspended, but it will assess 3 criminal history points for Tapia's accepting the earnings of a prostitute conviction, because that offense is not relevant conduct to the instant offense; and

(ii) the Court will adjust Tapia's sentence downward in light of the time Tapia served on his promoting prostitution sentence, because that offense was partially within the relevant conduct for the instant offense.

## FACTUAL BACKGROUND

On April 11, 2012, Albuquerque, New Mexico, Police Department's VICE unit officers, working to "apprehend females who were using the internet . . . to solicit prostitution," contacted a woman named Montana Levasseur and agreed to pay her $300.00 for sex in a hotel room. PSR ¶¶ 13-14, at 5. Levasseur met with an undercover officer in a hotel room, arriving with crate containing two small dogs. See PSR ¶ 15, at 5. Levasseur called Tapia on the telephone, and told him that "she was in the room and was safe." PSR ¶ 13, at 5. APD detectives entered the hotel room and arrested Levasseur. See PSR ¶ 14, at 5. APD allowed Levasseur to call Tapia on the telephone; she told him that she "got busted" and asked him to come to the hotel and pick up her dogs. PSR ¶¶ 15-16, at 5-6. Tapia agreed, and, when he arrived at the hotel in his car, APD officers ordered him to exit the vehicle. See PSR ¶ 16, at 5-6. Tapia attempted to drive away, but his car stalled, and APD officers apprehended him. See PSR ¶¶ 16-17, at 5-6. APD officers found, among other things, a pistol and ammunition in Tapia's car. See PSR ¶¶ 19-20, at 6-7.

## PROCEDURAL BACKGROUND

The Court provided a comprehensive history of this case's procedural background in its Second Amended Memorandum Opinion and Order, filed December 14, 2017 (Doc. 122) ("Sentencing MOO"). The USPO assessed 3 criminal history points for Tapia's convictions in Case No. D-2020-CR-2012-3528, which included convictions for promoting prostitution, accepting the earnings of a prostitute, transferring or receiving stolen vehicles, possession of a controlled substance, and aggravated fleeing from a law enforcement officer; Tapia was

sentenced to 5 years imprisonment for that case. See PSR ¶ 47, at 13. In the Sentencing MOO, the Court determined that it lacked sufficient evidence to conclude that all the conduct in Case No. D-202-CR-2012-3528 was temporally distinct from the instant offense, but could conclude that the receiving or transferring a stolen motor vehicle violation did not happened on the same day as the instant offense. See Sentencing MOO at 46 (noting that the instant offense's discovery does not indicate that the car Tapia was driving was stolen). The Court also decided that it would not grant a downward adjustment to Tapia's sentence pursuant to U.S.S.G. § 5G1.3(b), because Tapia did not prove that his prostitution-related convictions from Case No. D-202-CR-2012-3528 were relevant conduct to the instant offense. See Sentencing MOO at 47-48. The Court held a sentencing hearing on December 15, 2017. See Draft Hearing Transcript, taken December 15, 2017 ("Tr.").[1] Tapia made two objections to the Sentencing MOO. See Tr. at 3:1-4:6 (Serna); id. at 4:15-16 (Serna). First, he argued that the Court should assess 1 criminal history point -- not 3 criminal history points -- for Tapia's receiving or transferring a stolen motor vehicle conviction in Case No. D-202-CR-2012-3528, because that conviction's sentence was suspended. See Tr. at 3:1-5 (Serna); id. at 20:3-22 (Serna). Tapia entered into evidence several documents relating to that case: (i) the grand jury indictment, see Grand Jury Indictment at 1 (dated July 26, 2012)(Hearing Exhibit A)("State Indictment") (charging Tapia with human trafficking, two counts of promoting prostitution, accepting earnings of a prostitute, receiving or transferring stolen motor vehicles, and possession of a controlled substance); (ii) Jury Verdicts (dated May 28, 2014)(Hearing Exhibit C); (iii) and the Judgment, Sentence, and Order Partially Suspending Sentence (dated April 30, 2015)(Hearing Exhibit D)("State Sentence")(listing Tapia sentences for each conviction). Tapia argued that the

_____

[1]The Court's citations to the hearing's transcript refer to the court reporter's original, unedited version. Any final version may contain slightly different page and/or line numbers.

State Sentence shows that the state court suspended Tapia's receiving or transferring stolen motor vehicles sentence, because the state court suspended all sentences besides the sentences for promoting prostitution and accepting the earnings of a prostitute. See Tr. 17:1-18:14 (Serna, Cruz). Tapia asserts that those convictions' sentences received habitual offender enhancements, and, under New Mexico law, courts cannot suspend sentences that receive habitual offender enhancements. See Tr. at 17:1-9 (Serna, Cruz). According to Tapia, the state court must have suspended the other sentences, including Tapia's receiving or transferring stolen motor vehicles sentence, because it sentenced Tapia to 5 years imprisonment -- the prostitution-related sentences' sum -- and issued a suspended sentence of four years and six months -- the remaining sentences' sum. See Tr. at 17:9-18:14 (Serna, Cruz). Tapia contends that suspended sentences call for 1 criminal history point. See Tr. at 20:4-7 (Serna).

Second, Tapia argues that the Court should issue a downward departure pursuant to U.S.S.G. § 5G1.3 for time served on Tapia's prostitution-related convictions, because those offenses are relevant conduct to the instant offense. See Tr. at 23:24-24:5 (Serna). Tapia entered into evidence several documents relating to Tapia's April 11, 2012, arrest: (i) his Bail Bond (dated April 14, 2012)(Hearing Exhibit B); (ii) his Bail Bond Application (dated April 14, 2012) (Hearing Exhibit B); (iii) his Bail Bond Receipt (dated April 14, 2012)(Hearing Exhibit B), (iv) Charges/Warrants/Bond Information Summary (dated April 13, 2012)(Hearing Exhibit B); and (v) the Albuquerque Police Department's Supplementary Offense Report (dated April 17, 2012)(Hearing Exhibit E)("APD Supp. Report"). Tapia argues that his promoting prostitution conviction is relevant conduct to the instant offense, because these documents show that Tapia's April 11, 2012, arrest for promoting prostitution led APD officers to discover the firearm at issue in Tapa's being a felon in possession of a firearm offense. See Tr. at 24:15-30:20 (Serna,

Walsh).  Tapia also argues that his accepting the earnings of a prostitute offense is also relevant conduct to the instant offense, because the woman who paid for Tapia's bond following his April 11, 2012 arrest raised that money by working as a prostitute.  See Tr. at 27:18-28:5 (Serna).  Tapia asserts that he is not getting good time credit for his prostitution-related convictions, and, therefore, the Court should grant a downward departure pursuant to § 5G1.3(d) app. n.4(E).  See Tr. at 30:24-31:13 (Serna).

The United States countered that Tapia's prostitution-related offenses were not relevant conduct to the instant offense, because (i) the State Indictment's allegation that Tapia committed those offenses within a several-months long time range indicates that the prosecutors intended to present evidence within that time range, not just from the April 11, 2012 incident; and (ii)  prostitution and firearm possession are not similar offenses.  See Tr. at 35:4-36:4 (Walsh).

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court of the United States reaffirms the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute."  530 U.S. at 481.  The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and its Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi v. New Jersey, 530 U.S. at 490.  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or

admitted by the defendant."  Blakely v. Washington, 542 U.S. at 303 (emphasis and citations

omitted).  Apprendi v. New Jersey does not, however, "apply to the present advisory-Guidelines

regime," because the sentencing guidelines are no longer mandatory.  United States v. Ray, 704

F.3d 1307, 1314 (10th Cir. 2013)(citing United States v. Booker, 543 U.S. 220, 259 (2005)).

More recently, the Supreme Court held that Apprendi v. New Jersey's requirements apply to

facts that increase a defendant's mandatory minimum sentence.  See Alleyne v. United States,

570 U.S. 99 (2013).

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that

Blakely v. Washington and United States v. Booker do not change the district court's

enhancement findings analysis.  See United States v. Magallanez, 408 F.3d at 684-85.  United

States v. Magallanez involves plain-error review of a drug sentence in which a jury found the

defendant guilty of conspiracy to possess with intent to distribute, and to distribute,

methamphetamine.  See 408 F.3d at 676.  As part of its verdict, the jury, through a special

interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing,

however, the judge -- based on testimony of the various amounts that government witnesses

indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the

defendant and used that amount to increase his sentence under the Guidelines.  See 408 F.3d at

682.  The district court's findings increased the defendant's Guidelines sentencing range from 63

to 78 months to 121 to 151 months.  See 408 F.3d at 682-83.  On appeal, the Tenth Circuit stated

that, both before and after Congress' passage of the Sentencing Reform Act, 18 U.S.C. § 3553,

"sentencing courts maintained the power to consider the broad context of a defendant's conduct,

even when a court's view of the conduct conflicted with the jury's verdict."  408 F.3d at 684.

Although United States v. Booker made the Guidelines ranges "effectively advisory," the Tenth

Circuit reaffirms that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." United States v. Magallanez, 408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[2] "[T]he application of an enhancement . . . does not implicate the Supreme Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, 2012 WL 2574810, at *3 (D.N.M. 2012)(Browning, J.). The Tenth Circuit applies Apprendi v.

_____

[2]Although the Tenth Circuit states in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105). See United States v. Olsen, 519 F.3d 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)). The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence. United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence, because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges, entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (finding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314. A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increased his sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 592 F. App'x 699, 705 (10th Cir. 2014)(unpublished)(holding that, after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").[3] The Court has noted:

> [A]lthough the decision of the Supreme Court of the United States in Alleyne v. United States, . . . 133 S. Ct. 2151 . . . (2013), expands the rule from Apprendi v. New Jersey, 530 U.S. 466 . . . (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence. See [United States v. Sangiovanni,] 2014 WL 4347131, at *22-26 [(D.N.M. 2014)(Browning, J.)].

---

[3]United States v. Hendrickson, is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Hendrickson, United States v. Schmidt, 353 F. App'x 132, 135 (10th Cir. 2009), United States v. Brown, 212 F. App'x 747 (10th Cir. 2007), United States v. Banda, 168 F. App'x 284 (10th Cir. 2006), and United States v. Taylor, 129 F.3d 131 (10th Cir. 1997) have persuasive value with respect to a material issue, and will assist the Court in its preparation of this Memorandum Opinion and Order.

United States v. Cervantes-Chavez, 2014 WL 6065657, at *14 (D.N.M. 2014)(Browning, J.).

In United States v. Ulibarri, 115 F. Supp. 3d 1308 (D.N.M. 2015)(Browning, J.), the Court considered the United States' assertion that the defendant deserved 8 additional offense levels for threatening to cause physical injury to a person in order to obstruct justice. See 115 F. Supp. 3d 1336-37 (citing U.S.S.G. § 2J1.2(b)(1)(B)). The Court stated that, for the offense levels to apply,

> the United states must prove two elements by a preponderance of the evidence. First, K. Ulibarri's offense must involve "threatening to cause physical injury to a person." U.S.S.G. § 2J1.2(b)(1)(B). This element requires that K. Ulibarri "communicate[d an] intent to inflict [physical injury] on another[.]" Black's Law Dictionary 1618 . . . . Second, K. Ulibarri must have made that threat "in order to obstruct the administration of justice." U.S.S.G. § 2J1.2(b)(1)(B).

United States v. Ulibarri, 115 F. Supp. 3d at 1336. The Court determined that, although the United States showed that the defendant "communicated an intent to inflict physical injury" on someone, the United States failed to prove, by a preponderance of the evidence, that the defendant "did so to obstruct the administration of justice." 115 F. Supp. 3d at 1336. The Court concluded that, because the United States failed to meet its burden on this second element, it would not impose the additional 8 offense levels under U.S.S.G. § 2J1.2(b)(1)(B). See United States v. Ulibarri, 115 F. Supp. 3d at 1336.

## LAW REGARDING RELEVANT CONDUCT FOR SENTENCING

In calculating an appropriate sentence, the Guidelines consider a defendant's "offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1, n.1(H). In United States v. Booker, the Supreme Court notes:

> Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment

upon, the *real conduct* that underlies the crime of conviction. That determination is particularly important in the federal system where crimes defined as, for example, "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by . . . extortion," . . . can encompass a vast range of very different kinds of underlying conduct.

543 U.S. at 250-51 (emphasis in original)(quoting 18 U.S.C. § 1951(a)). The Supreme Court's reasoning in <u>United States v. Booker</u> suggests that the consideration of real conduct is necessary to effectuate Congress' purpose in enacting the Guidelines.

Section 1B1.3(a) provides that the base offense level under the Guidelines "shall be determined" based on the following:

(1)    (A)    all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

        (B)    in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were--

                (i) within the scope of the jointly undertaken criminal activity,
                (ii) in furtherance of that criminal activity, and
                (iii) reasonably foreseeable in connection with that criminal activity;

        that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2)    solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3)    all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4)    any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a)(1)-(4).  The court may consider, as relevant conduct, actions that have not

resulted in a conviction.  Pursuant to the commentary to U.S.S.G. § 6A1.3, evidentiary standards

lower than beyond a reasonable doubt are permitted to show relevant conduct.  The court may

rely upon reliable hearsay, so long as the evidence meets the preponderance-of-the-evidence

standard.  See United States v. Vigil, 476 F. Supp. 2d 1231, 1245 (D.N.M. 2007)(Browning J.),

aff'd, 523 F.3d 1258 (10th Cir. 2008).  Accord United States v. Schmidt, 353 F. App'x 132, 135

(10th Cir. 2009)(unpublished)("The district court's determination of 'relevant conduct' is a

factual finding subject to a preponderance of the evidence standard, and clear error review.").

The evidence and information upon which the court relies, however, must have sufficient indicia

of reliability.  See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to

the sentencing determination, the court may consider relevant information without regard to its

admissibility under the rules of evidence applicable at trial, provided that the information has

sufficient indicia of reliability to support its probable accuracy.").

      Supreme Court precedent on relevant conduct consists primarily of two cases: Witte v.

United States, 515 U.S. 389 (1995), and United States v. Watts, 519 U.S. 148 (1997).  In Witte v.

United States, the Supreme Court upheld the use of uncharged conduct at sentencing against a

double-jeopardy challenge.  See 515 U.S. at 404-06.  The defendant in Witte v. United States had

been involved in an unsuccessful attempt to import marijuana and cocaine into the United States

in 1990, and in an attempt to import marijuana in 1991.  See 515 U.S. at 392-93.  In March 1991,

a federal grand jury indicted the defendant for attempting to possess marijuana with intent to

distribute in association with the defendant's latter attempt to import narcotics.  See 515 U.S. at

392-93.  At sentencing, the district court concluded that, because the 1990 attempt was part of

the continuing conspiracy, it was relevant conduct under U.S.S.G. § 1B1.3, and thus calculated

the defendant's base offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes.  See 515 U.S. at 394.

In September, 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with his activities in 1990.  See 515 U.S. at 392-93. The defendant moved to dismiss the indictment, contending that he had already been punished for the cocaine offenses, because the court had considered those offenses relevant conduct at the sentencing for the 1991 marijuana offense.  See 515 U.S. at 395.  The district court agreed and dismissed the indictment, holding that punishment for the cocaine offenses would violate the prohibition against multiple punishments in the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States.  See 515 U.S. at 395.  The United States Court of Appeals for the Fifth Circuit reversed and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct."  United States v. Witte, 25 F.3d 250, 258 (5th Cir. 1994).  In reaching this holding, the Fifth Circuit acknowledged that its conclusion was contrary to other United States Courts of Appeals opinions, including a Tenth Circuit opinion, that had previously considered this question.  See 25 F.3d at 255 n.19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the Courts of Appeals and affirmed the Fifth Circuit decision.  See 515 U.S. at 395.  In holding that a district court's consideration of the defendant's relevant conduct did not punish the defendant for that conduct, the Supreme Court concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted."  515 U.S. at 401.  The Supreme Court reasoned that sentencing courts had always considered relevant conduct and "the fact that the sentencing

process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense."  515 U.S. at 402.  Sentencing enhancements do not punish a defendant for uncharged offenses; rather, they reflect Congress' policy judgment "that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity."  515 U.S. at 403.

In United States v. Watts, the Supreme Court, in a per curiam opinion, relied upon Witte v. United States and upheld, against a double-jeopardy challenge, a sentencing judge's use of conduct for which the defendant had been acquitted.  See United States v. Watts, 519 U.S. at 149.  The Supreme Court noted that its conclusion was in accord with every United States Court of Appeals -- other than the Court of Appeals for the Ninth Circuit -- and that each had previously held that a sentencing court may consider conduct for which the defendant had been acquitted, if the government establishes that conduct by a preponderance of the evidence.  See 519 U.S. at 149 (citing, e.g., United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir. 1991)).  The Supreme Court began its analysis with 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  United States v. Watts, 519 U.S. at 151 (quoting 18 U.S.C. § 3661).  According to the Supreme Court, 18 U.S.C. § 3661 embodies the codification of "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion."  United States v. Watts, 519 U.S. at 151-52.

Tenth Circuit case law adheres closely to the Supreme Court's results in <u>Witte v. United States</u> and <u>United States v. Watts</u>. <u>See</u> <u>United States v. Andrews</u>, 447 F.3d 806, 810 (10th Cir. 2006)(applying <u>Witte v. United States</u>' holding to affirm that a career-offender enhancement does not violate the Fifth Amendment's Double Jeopardy Clause). In <u>United States v. Banda</u>, 168 F. App'x 284 (10th Cir. 2006)(unpublished), the Tenth Circuit rejected a defendant's argument that it was "structural error" for a district court to find sentencing factors "by a preponderance of the evidence rather than the jury applying a beyond-a-reasonable-doubt standard." 168 F. App'x at 290. The Tenth Circuit explained that "'[i]t is now universally accepted that judge-found facts by themselves do not violate the Sixth Amendment. Instead, the constitutional error was the court's reliance on judge-found facts to enhance the defendant's sentence mandatorily.'" 168 F. App'x at 290 (quoting <u>United States v. Lauder</u>, 409 F.3d 1254, 1269 (10th Cir. 2005)).

In <u>United States v. Coleman</u>, the defendant appealed the district court's sentence enhancement for firearms possession after he was convicted of conspiracy to possess and possession of a controlled substance with intent to distribute, but was acquitted of using or carrying a firearm during and in relation to a drug trafficking crime. <u>See</u> 947 F.2d at 1428. The Tenth Circuit acknowledged that courts had taken various positions on whether a sentence may be enhanced for firearms possession despite a defendant's acquittal on firearms charges. <u>See</u> 947 F.2d at 1428-29 (citing <u>United States v. Duncan</u>, 918 F.2d 647, 652 (6th Cir. 1990)("[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense."); <u>United States v. Rodriguez</u>, 741 F. Supp. 12, 13-14 (D.D.C. 1990)(refusing to apply 2-level enhancement for firearms possession, because "[t]o add at least 27 months to the sentence for a

charge of which the defendant was found not guilty violates the constitutional principle of due process and the ban against double jeopardy")).

Without discussion related to the standard of proof a sentencing court should use to make factual findings, the Tenth Circuit held that the district court did not err in enhancing the defendant's sentence for possession of a firearm. See United States v. Coleman, 947 F.2d at 1429. The Tenth Circuit based its conclusion on evidence that: (i) individuals at the arrest scene handled the weapons at will; (ii) the weapons were handled at will by individuals who lived at the house; and (iii) the weapons were kept for the protection of conspiracy participants and the narcotics involved. See 947 F.2d at 1429. The Tenth Circuit summarized that, in reviewing relevant federal case law, it found "persuasive the decisions that have allowed a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted." 947 F.2d at 1429.

In United States v. Washington, 11 F.3d at 1510, the defendant argued that the United States needed to prove drug quantities used as relevant conduct to establish a defendant's offense level by clear-and-convincing evidence, rather than by a preponderance of the evidence. See 11 F.3d at 1512. The defendant objected to his sentencing, because the drug quantity that the district court considered as relevant conduct, and which the court found by a preponderance of the evidence, increased his Guidelines sentencing range from 210-262 months to life in prison. See 11 F.3d at 1515. The defendant argued "that because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required." 11 F.3d at 1515. Although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," it held that "the Due Process Clause does not require sentencing facts

in the ordinary case to be proved by more than a preponderance standard." 11 F.3d at 1516 (citing McMillan v. Pennsylvania, 477 U.S. 79, 84 (1986)). See United States v. Sangiovanni, 2014 WL 4347131, at *22-26 (D.N.M. 2014)(Browning, J.)(concluding that a sentencing court can cross reference from the Guidelines that correspond to the defendant's crime of conviction to the Guidelines for another, more harshly punished crime, if it can be established by a preponderance of the evidence that the defendant committed the more serious crime); United States v. Cervantes-Chavez, 2014 WL 6065657, at *14-15 (D.N.M. 2014)(Browning, J.)(cross referencing from the guideline for being an illegal alien in possession of a firearm to the drug-possession guideline after finding by a preponderance of the evidence that the defendant committed a drug-possession crime).

The Court has previously held that it may consider a defendant's refusal to answer questions for the PSR, while not drawing an adverse inference from the refusal. See United States v. Goree, 2012 WL 592869, at *11 (D.N.M. 2012)(Browning, J.). The Court has also held that, although it can consider a defendant's silence about information regarding herself or others engaging in criminal conduct, it will not rely on that silence to increase the defendant's sentence. See United States v. Chapman, 2012 WL 257814, at *13 n.5 (D.N.M. 2012)(Browning, J.). Finally, the Court has held that a defendant's "aggression towards other individuals, and the murder he may have attempted to orchestrate while incarcerated" is relevant information which the Court can consider in fashioning a proper sentence. United States v. Romero, 2012 WL 6632493, at *23 (D.N.M. 2012)(Browning, J.).

## ANALYSIS

The Court concludes that: (i) the Court will not assess 3 criminal history points for Tapia's receiving or transferring a stolen motor vehicle conviction, because the sentence for that

offense was suspended, but it will assess 3 criminal history points for his accepting the earnings of a prostitute offense, because that offense is not relevant conduct to the instant offense; and (ii) the Court will issue a downward departure to Tapia's sentence in light of time served for his promoting prostitution sentence, because that offense was partially within the relevant conduct for the instant offense.

I.      **BASED ON NEW EVIDENCE THAT TAPIA ENTERED AT THE DECEMBER 15, 2017, HEARING, THE COURT CHANGES ITS CONCLUSION IN THE SENTENCING MOO AND SUSTAINS TAPIA'S OBJECTION TO THE USPO ASSESSING 3 CRIMINAL HISTORY POINTS FOR HIS RECEIVING OR TRANSFERRING A STOLEN MOTOR VEHICLE CONVICTION, BUT WILL ASSESS 3 CRIMINAL HISTORY POINTS FOR TAPIA'S ACCEPTANCE OF THE EARNINGS OF A PROSTITUTE CONVICTION.**

At the Sentencing Hearing, Tapia argued that the Court should assess 1 criminal history point -- instead of 3 criminal history points -- for his receiving or transferring a stolen motor vehicle conviction, because that conviction's sentence was suspended. See Tr. at 3:2-5 (Serna). Based on the evidence Tapia presented at the Sentencing Hearing, the Court agrees that Tapia's receiving or transferring a stolen motor vehicle conviction does not call for 3 criminal history points. The Court determines, however, that it will assess 3 criminal history points for Tapia's acceptance of the earnings of a prostitute conviction, because, based on Tapia's assertions and new evidence, that offense is not relevant conduct to the instant firearms offense.

A defendant's criminal history score is based on the defendant's prior sentences, see U.S.S.G. § 4A1.1, and a prior sentence "means a sentence imposed prior to sentencing on the instant offense, other than a sentence that is conduct that is part of the instant offense." U.S.S.G. § 4A1.2 app. n.1. "Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of §1B1.3." U.S.S.G. § 4A1.2 app. n.1.

Tapia's conviction of promoting prostitution is not a prior sentence. The United States has not provided sufficient reasons for the Court to conclude that the promoting prostitution

conviction is not relevant conduct. The United States bears the burden to disprove the relevancy of prior conduct when seeking to increase a defendant's criminal history score. See United States v. Kieffer, 681 F.3d 1143, 1165 (10th Cir. 2012); United States v. Wilson, 416 F.3d 1164, 1168 (10th Cir. 2005)("[T]he government bears the burden of proving the prior offense is not relevant conduct."); United States v. Torres, 182 F.3d 1156, 1163 (10th Cir. 1999). The only evidence suggesting that Tapia's promoting prostitution conviction relates to conduct distinct from the instant offense is that the State Indictment indicates that Tapia promoted prostitution "on or between" January 13 and June 2012. State Indictment at 1-2. In the Sentencing Hearing, Tapia stated that neither he nor his trial counsel in that case understand "why the state made these odd date ranges when the evidence at trial was all that . . . happened on April 11." Tr. at 36:10-16 (Serna). The date range, by itself, is not enough to establish that the conviction is a prior sentence to the instant offense. The Court concludes that the United States has not met its burden to show that Tapia's promoting prostitution conviction is a prior offense, because it has not provided evidence that Tapia promoted prostitution on other occasions and that Tapia's conviction was based on evidence related to those other occasions. Even if the State Indictment's date range was sufficient to meet the United States' burden, the United States has not shown that these other instances are not similar to and temporally close enough to the instant offense that they are not relevant conduct to the instant offense.

Based on evidence that Tapia presented at the Sentencing Hearing, Tapia's accepting the earnings of a prostitute offense is a prior sentence that calls for 3 criminal history points. At first glance, it may appear that Tapia's accepting the earnings of a prostitute offense is conduct relevant to the instant firearms offense, and, therefore, would not be a prior offense. See U.S.S.G. § 4A1.2 app. n.1. One way for an offense to be relevant conduct to the instant offense

is if the offense is committed in the "same course of conduct" as the instant offense. U.S.S.G. § 1B1.3(a)(2). To be part of the same course of conduct, acts must be "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 app. n.5(B)(ii). Courts should consider three factors in making this determination: "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." U.S.S.G. § 1B1.3 app. n.5(B)(ii). The time interval factor favors Tapia, because he accepted a prostitute's earnings three days after he possessed the firearm while promoting prostitution. <u>Compare</u> APD Supp. Report at 1 (indicating that Tapia was arrested on April 11, 2012), <u>with</u> Bail Bond Receipt (showing that Levasseur paid for Tapia's bond on April 14, 2012). The offenses' degree of similarity, however, does not favor Tapia. To be sure, it is possible that a firearm can help someone like Tapia promote prostitution. The police report of the Alcohol, Tobacco, Firearms, and Explosives ("ATF") notes that, when the prostitute, Levasseur, arrived at the hotel room to meet the undercover VICE detective, Levasseur called Tapia on the telephone, telling Tapia that she was in the room and was safe. <u>See</u> Summary of Event: Arrest of Marc Tapia ¶ 5, at 1, filed August 15, 2016 (Doc. 98-5)("ATF Report"). Levasseur explained to the VICE Detective that she and Tapia "work on the buddy system." ATF Report ¶ 5, at 1. These facts suggest that Tapia had some concern over Levasseur's safety and would, therefore, use his firearm to protect Levasseur. Theoretical usefulness is not, however, enough to establish that the offenses are related conduct. For instance, when considering whether drug and firearms offenses can be grouped, courts conclude that they cannot soundly be grouped under U.S.S.G. § 3D1.2(d).[4] <u>See</u>

---

[4]Drug offenses can, however, be considered relevant conduct to firearms when calculating a defendant's base offense level. <u>See</u>, <u>e.g.</u>, <u>United States v. Cervantes-Chavez</u>, 59 F. Supp. 3d 1295, 1317 (D.N.M. 2014)(Browning, J.). <u>See</u> U.S.S.G. § 2K1.2 2014 Amendment

United States v. Espinosa, 539 F.3d 926, 930 (8th Cir. 2008)(holding that a defendant's firearm and drug convictions should not be grouped under § 3D1.2(d), because those offenses "are not 'of the same general type'" (quoting U.S.S.G. § 3D1.2 app. n.6)); United States v. Brown, 212 F. App'x 747, 755 (10th Cir. 2007)(Tymkovich, J.)(concluding that the district court did not err in determining that that a defendant's state drug conviction arising out of the "same nucleus of facts" as his federal firearms conviction is a prior offense, because drug manufacturing and weapons possession represent different societal harms); United States v. Taylor, 129 F.3d 131 (10th Cir. 1997)(table)(stating that drug and weapons offenses are not of the same "general type" (quoting U.S.S.G. § 3D1.2 app. n.6)). See also U.S.S.G. § 1B1.3(a)(2) (stating that relevant conduct includes, "with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction"). Similarly, accepting the earnings of a prostitute and being a felon in possession of a handgun represent different societal harms, and, therefore, the offenses are not "groupable" under § 3D1.2(d), as § 1B1.3(a)(2) requires. U.S.S.G. § 3D1.2 app. n.2 ("[C]ounts are grouped together when the societal interests that are harmed are closely related."); § 3D1.2 app. n.6 ("Counts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type . . . .").

Tapia's acceptance of the earnings of a prostitute conviction is also not relevant conduct under § 1B1.3(a)(1). That section states that conduct is relevant to the instant offense if the defendant committed the other offense "during the commission of the offense of conviction, in

---

Notes (stating that certain specific offense enhancements can apply to relevant conduct even if the other felony offense is not a groupable offense).

preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). At the Sentencing Hearing, Tapia demonstrated to the Court that Tapia accepted the earnings of a prostitute on April 14, 2012, when Levasseur used money she earned from prostitution to pay for Tapia's bond. See Bail Bond Receipt at 1 (indicating that Levasseur paid $645.00 on April 14, 2012, to pay for Tapia's bond); Bail Bond at 1 (indicating that the bond was signed on April 14, 2012, at 9:37 p.m.); Tr. at 10:9-11:6 (Serna, Cruz)(Tapia's state trial attorney testifying that the prosecution proved the acceptance of the earnings of a prostitute charge by presenting evidence that Levasseur prostituted herself to raise the money to pay for Tapia's bond on April 14, 2012). The Court cannot soundly conclude that Tapia accepted that money during the commission of or in preparation for the instant firearms offense, because the instant offense occurred three days earlier, on April 11, 2012. Nor can the Court soundly conclude that Tapia accepted the bond in the course of attempting to avoid detection or responsibility for the instant firearms offense, because he was already apprehended for that offense. No other provision of § 1B1.3 applies to Tapia's acceptance of the earnings of a prostitute.

Given that Tapia's acceptance of the earnings of a prostitute is a prior offense, the Court will assess 3 criminal history points pursuant to § 4A1.1(a), because, based on the preponderance of the evidence, that offense's conviction carried a sentence of 2.5 years. At the Sentencing Hearing, Tapia entered into evidence the State Sentence, which listed Tapia's sentences for his convictions in Case No. D-202-CR-2012-3528. The State Sentence indicates that the state court sentenced Tapia to five years, and imposed a suspended sentence of four years and six months. See State Sentence at 4. Tapia's state trial attorney testified that the state court suspended the

sentences for Counts V through VII.[5]  See Tr. at 17:16-19 (Cruz).  Although the State Sentence does not specify which of the sentences from Tapia's five convictions were suspended, the Court finds by a preponderance of the evidence that Tapia's receiving or transferring a stolen motor vehicle conviction was among the sentences that the state court suspended.  According to the State Sentence, Tapia's convictions for promoting prostitution -- Count III -- and for accepting earnings of a prostitute -- Count IV -- received one-year habitual offender enhancements; under New Mexico law, habitual offender sentences cannot be suspended.  See N.M. Stat. Ann. § 31-18-17(A).[6]  The only combination of sentences that adds up to five years is Count III and Count IV -- which both received two and a half year sentences -- which means that the remaining counts must have been suspended.[7]  See Tr. at 16:12-18:14 (Serna, Cruz).  The Court, in making

_____

[5]Count III is for promoting prostitution, Count IV is for accepting the earnings of a prostitute, Count V is for receiving or transferring a stolen motor vehicle, Count VI is for possession of a controlled substance, and Count VII is for aggravated fleeing from a law enforcement officer.  See State Sentence at 2-3.

[6]Section 31-18-17(A) states:

A person convicted of a noncapital felony in this state whether within the Criminal Code or the Controlled Substances Act or not who has incurred one prior felony conviction that was part of a separate transaction or occurrence or conditional discharge under Section 31-20-13 NMSA 1978 is a habitual offender and his basic sentence shall be increased by one year. The sentence imposed pursuant to this subsection shall not be suspended or deferred, unless the court makes a specific finding that the prior felony conviction and the instant felony conviction are both for nonviolent felony offenses and that justice will not be served by imposing a mandatory sentence of imprisonment and that there are substantial and compelling reasons, stated on the record, for departing from the sentence imposed pursuant to this subsection.

N.M. Stat. Ann. § 31-18-17(A) (emphasis added).  There is no evidence that the state court made a specific finding of substantial and compelling reasons for departing from § 31-18-17(A)'s directive not to suspend Tapia's enhanced offender sentences.

[7]The New Mexico Court of Appeals, considering an earlier and similarly worded version of N.M. Stat. Ann. § 31-18-17(A), determined that the statute "only prohibits the suspending or

its finding, assumes that the state judge -- the Honorable Jacqueline Flores, District Judge, Second Judicial District, County of Bernalillo, State of New Mexico -- correctly applied the state law rather than finding that she incorrectly applied state law.

Tapia's suspended sentences do not call for additional criminal history points under § 4A1.1(c) pursuant to § 4A1.2(a)(3) (stating that a suspended conviction should be counted as a

---

deferring of the one year imposed by that section." State v. Russell, 1980-NMCA-074, ¶ 4, 612 P.2d 1355, 1356. Even assuming that State v. Russell applies to the current N.M. Stat. Ann. § 31-18-17(A), and that the state court chose to suspend Count III and/or Count IV's basic sentence -- i.e., the sentence imposed by statute, see N.M. Stat. Ann. § 31-18-15 -- the Court would still have to assess 3 criminal history points for Tapia's Case No. D-202-CR-2012-3528 convictions, because there is no combination of suspended and not-suspended sentences that would produce any other outcome.

The state court entered 1.5-year basic sentences on Counts III, IV, V, VI, and VII, and imposed 1-year habitual offender enhancements to Counts III and IV. See State Sentence at 2-3. Those sentences come to 9.5 years, but the state court suspended 4.5 years and imposed an actual sentence of imprisonment of 5 years. See State Sentence at 4. Tapia's state trial attorney testified that the state court suspended Tapia's sentences for Counts V, VI, and VII. See Tr. at 17:16-19 (Cruz). If the state trial attorney was incorrect, and the state court suspended Count III and IV's basic sentences, then Count III and IV would account for 2 not-suspended years and 3 suspended years. To make the numbers work, the state court would have to add 3 not-suspended years and 2.5 suspended years, which it could do only by suspending one of the remaining counts' sentence. In that scenario, the Court would assess 3 criminal history points, because Counts IV, V, VI and VII would be counted as a single prior sentence, and their total consecutive not-suspended sentence would be four years (1 + 1.5 + 1.5 = 4). See U.S.S.G. § 4A1.2(a)(2) (stating that sentences imposed on the same day or resulting from offenses contained in the same charging documents should be treated as a single prior sentence); id. (stating that when prior sentences are consecutive and treated as a single sentence, "use the aggregate sentence" when applying § 4A1.1); State Sentence at 2-3 (indicating that the sentences are consecutive).

The same outcome results if the state court suspended Count III's basic sentence but not Count IV's basic sentence, because, in that scenario, Count IV's 2.5 not-suspended years -- the 1.5-year basic sentence plus the one-year habitual offender enhancement -- would combine with 1.5 not-suspended years from one of Count V, VI, or VII. The total consecutive sentence would be 4 years (2.5 + 1.5 = 4), and, therefore, call for 3 criminal history points under § 4A1.1(a).

If, however, the state court suspended Count IV's basic sentence, then Count IV's one-year enhanced sentence would be added to 1.5 years from either Count V, VI, or VII, for a total of 2.5 years (1 + 1.5 = 2.5), again calling for 3 criminal history points under § 4A1.1(a).

Therefore, given that Count IV's accepting-the-earnings-of-a-prostitute conviction is not relevant conduct to the instant offense, see supra at 18-21, there is no possible scenario in which the Court would not assess 3 criminal history points for Tapia's Case No. D-202-CR-2012-3528 convictions.

prior sentence under § 4A1.1(c)), because the suspended sentences derive from offenses in the same charging instrument as Tapia's charge for acceptance of the earnings of a prostitute. <u>See</u> State Indictment at 1-3. Section 4A1.2(a)(2) states that sentences which resulted from offenses in the same charging instrument or were imposed on the same day are treated like a single sentence. When counting multiple concurrent prior sentences as a single sentence, the Guidelines direct sentencing courts to use the offense with the longest sentence when applying § 4A1.1. <u>See</u> U.S.S.G. § 4A1.2(a). Tapia's two-and-a-half year sentence for accepting the earnings of a prostitute is the longest sentence among those sentences; therefore, the Court applies 3 criminal history points pursuant to § 4A1.1(a) for Tapia's convictions arising from his April, 2015, convictions in Case No. D-202-CR-2012-3528.

## II. THE COURT WILL NOT ADJUST TAPIA'S SENTENCE ACCORDING TO U.S.S.G. § 5G1.3(b), BUT WILL ISSUE A DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. § 5G1.3(d) FOR HIS PROMOTING PROSTITUTION OFFENSE.

At the Sentencing Hearing, Tapia argued that his "prostitution-related charges are relevant conduct" to the instant offense, and, therefore, the Court should award a downward departure for time served pursuant to U.S.S.G. § 5G1.3. Tr. at 23:24-24:5 (Serna). The Court will not grant a sentence reduction under § 5G1.3(b) based on Tapia's promoting prostitution conviction, because he has not met his burden to prove that his promoting prostitution conviction is relevant conduct for § 5G1.3(b) purposes. In the preceding section, the Court concluded that the United States did not meet its burden to disprove the relevancy of past conduct when it comes to calculating a defendant's criminal history score. <u>See</u> <u>supra</u> § I. For § 5G1.3(b) purposes, however, the burden to prove that past conduct is relevant shifts to the defendant. <u>See</u> <u>United States v. Lopez-Macias</u>, 661 F.3d 485, 494 (10th Cir. 2011)("[T]he law is well established that 'the defendant shall bear the burden of proof for sentence decreases.'" (quoting

United States v. Williams, 374 F.3d 941, 947 (10th Cir. 2004))); United States v. Nania, 724 F.3d 824, 833 (7th Cir. 2013)(stating that the defendant "has the burden of showing why his case met the requirements of § 5G1.3(b)"); United States v. Burch, 406 F.3d 1027, 1030 (8th Cir. 2005)(stating that a district court did not clearly err by not crediting time served on state convictions "[i]n light of [the defendant]'s failure to present evidence supporting his claim that the conduct underlying his state court convictions was 'relevant conduct' for purposes of section 5G1.3(b)").

Tapia has not met his burden to show that his promoting prostitution offense is relevant conduct to his instant firearms offense. At the Sentencing Hearing, Tapia supplemented the Court's understanding that Tapia's April 11, 2012, arrest related to his firearms offense and to promoting prostitution. See Tr. at 24:15-30:23 (Serna, Court). Tapia did not, however, foreclose the possibility that his promoting prostitution conviction was based on incidents separate from and in addition to the April 11, 2012, incident. Tapia's attorney, Mr. Serna, represented to the Court that, based on his discussions with Tapia's state trial attorney and his own "investigation" of that trial, the state prosecutors proved the promoting prostitution charge by presenting evidence relating to the April 11, 2012, incident.[8] Mr. Serna also stated that Tapia was convicted of Count III's alternative charge for promoting prostitution by transporting a prostitute, in violation of N.M. Stat. Ann. § 30-9-4(G), which, according to Mr. Serna, shows that the conviction pertains exclusively to the April 11, 2012, incident, because the police reports for that incident demonstrate that Tapia drove Levasseur to the hotel. See Tr. at 27:1-28:9 (Serna).

---

[8]If Tapia's promoting prostitution offense related only to Tapia's April 11, 2012, arrest, the offense would probably be relevant conduct to the instant offense -- despite the dissimilarities of promoting prostitution and being a felon in possession of a firearm -- pursuant to § 1B1.3(a)(1), because that section applies to a defendant's acts "that occurred during the commission of the offense [or] in preparation of that offense."

Nothing in the record establishes that Tapia was convicted of N.M. Stat. Ann. § 30-9-4(G), however. The State Sentence lists Count III's related statute as N.M. Stat. Ann. § 30-9-4, see State Sentence at 2; the jury verdict states that the jury found Tapia guilty of Count III without identifying a precise subsection, see Jury Verdicts at 3; and the PSR indicates that Tapia's June 12, 2012, arrest led to a charge for "Promoting Prostitution (Soliciting Patrons)," PSR ¶ 47, at 13, which correlates to N.M. Stat. Ann. § 30-9-4(E). Tapia's state trial attorney -- Rozan Cruz -- testified on the evidence presented to prove the acceptance of earnings of a prostitute charge, see Tr. at 9:24-1018 (Tapia, Cruz), but she did not speak to the evidence supporting the promotion of prostitution conviction.

Moreover, the PSR indicates that Tapia's promoting prostitution charge arose from Tapia's arrest on June 12, 2012. See PSR ¶ 47, at 13. Tapia objected to that provision by arguing that those offenses do not call for 3 criminal history points, because those charges arose from the April 11, 2012 incident. See Objections ¶¶ 12-17, at 8-11. In the Sentencing Hearing, Tapia asserted that the charges arose from the April 11, 2012, incident. See Tr. at 23:24-30:15 (Serna). Tapia does not, however, object to the facts in the PSR's June 12, 2012, arrest summary, and that summary suggests that Tapia's promoting prostitution conviction may be based on incidents besides the April 11, 2012, incident. According to the PSR, APD officers arrested Tapia on June 12, 2012, after officers suspected he was driving a stolen vehicle. See PSR ¶ 47, at 14. The PSR notes that Levasseur was a passenger in the car and that

> [f]urther investigation alleged the defendant physically abused Ms. Levasseur and was forcing her to engage in prostitution. Ms. Levasseur stated the defendant posted her on a website for solicitation and she would engage in sex for money. The defendant would allegedly take all the money Ms. Levasseur would earn. She also indicated the defendant would yell at her and threaten to hurt her if she didn't follow through with the arrangements.

PSR ¶ 47, at 14.

Although § 5G1.3(b) does not apply, the Court concludes that a downward departure to Tapia's sentence pursuant to § 5G1.3(d) is warranted, because the promoting prostitution offense is partially within relevant conduct for the instant offense. The Guideline's Commentary to § 5G1.3(d) states that

> in an extraordinary case involving an undischarged term of imprisonment under subsection (d), it may be appropriate for the court to downwardly depart. This may occur, for example, in a case in which the defendant has served a very substantial period of imprisonment on an undischarged term of imprisonment that resulted from conduct only partially within the relevant conduct for the instant offense. In such a case, a downward departure may be warranted to ensure that the combined punishment is not increased unduly by the fortuity and timing of separate prosecutions and sentencings.

U.S.S.G. § 5G1.3(d) app. n.4(E) (emphasis added). The Court concludes that a downward departure is appropriate in this case, because the Commentary's example is analogous to Tapia's situation. First, Tapia's promoting prostitution conviction derives from conduct that is at least "partially within the relevant conduct for the instant offense." U.S.S.G. § 5G1.3(d) app. n.4(E). Although the Court determined that Tapia has not met his burden to prove that his promoting prostitution conviction was based exclusively on the April 11, 2012, incident, the Court is persuaded that the April 11, 2012, incident likely provided at least a substantial share of evidence used to convict Tapia on that count. For instance, the PSR states that APD officers arrested Tapia for promoting prostitution. See PSR ¶ 12, at 5. The police reports, bond applications, and arrest information state that Tapia was arrested on April 11, 2012, for promoting prostitution. See ATF Report ¶ 31, at 3 (stating that Tapia "was placed under arrest for promoting prostitution"); APD Supp. Report at 1 (listing "prostitution/promoting" as the offense description); id. at 2 ("Marc Tapia was placed under arrest for promoting prostitution"); Bond Application at 1 (dated April 14, 2012)(Sentencing Hearing Exhibit B)(listing the charge as "promot[ing] prostitution"); Charges/Warrants/Bond Information at 1 (dated April 13, 2012)

(Sentencing Hearing Exhibit B)(indicating that he was arrested on April 11, 2012 for "Promot[ing] Prostitution").  The police reports also show that his April 11, 2012, arrest for promoting prostitution led to the discovery of the weapon at issue in Tapia's instant offense.  Compare ATF Report ¶ 33, at 3 (stating that a search of Tapia's car uncovered a pistol with the serial number 408402), with Indictment at 1, filed November 27, 2012 (Doc. 2)("Federal Indictment")(alleging that Tapia possessed a gun with the serial number 408402).

Second, a downward departure in light of Tapia's promoting prostitution sentence is appropriate to "ensure that the combined punishment is not increased unduly by the fortuity and timing of separate prosecutions and sentencings."  U.S.S.G. § 5G1.3(d) app. n.4(E).  Tapia entered his Plea Agreement on August 30, 2015.  It has been a long road to sentencing him.  Had the Court sentenced Tapia sooner, it would have had more leeway in imposing his sentence to run concurrently or partially concurrently to Tapia's promoting prostitution sentence pursuant to § 5G1.3(d).  Issuing a downward departure pursuant to § 5G1.3(d) app. n.4(E) restores the Court's power to adjust Tapia's sentence in light of his promoting prostitution sentence.

**IT IS ORDERED** that the Defendant's oral Objections to the Presentence Investigation Report, disclosed on October 2, 2017, filed November 21, 2017 (Doc. 117) are sustained in part and overruled in part.  The Court will not assess 3 criminal history points for Defendant Marc Tapia's receiving or transferring a stolen motor vehicle offense, but will assess 3 criminal history points for his accepting the earnings of a prostitute offense.  The Court will also issue a downward departure to Tapia's sentence in light of time served for his promoting prostitution sentence.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James D. Tierney
  Acting United States Attorney
Kimberly Brawley
David M. Walsh
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

David C. Serna
David C. Serna Attorney at Law
Albuquerque, New Mexico

  *Attorney for the Defendant*